RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TRUDY GRIFFIN,

        *Plaintiff-Appellant,*

    *v.*

DARRELL HARDRICK,

        *Defendant-Appellee.*

No. 09-5757

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 08-00828—Aleta Arthur Trauger, District Judge.

Argued: March 10, 2010

Decided and Filed: May 13, 2010

Before: COLE, GILMAN, and WHITE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Phillip L. Davidson, LAW OFFICES, Nashville, Tennessee, for Appellant. Keli J. Oliver, METROPOLITAN NASHVILLE DEPARTMENT OF LAW, Nashville, Tennessee, for Appellee. **ON BRIEF:** Phillip L. Davidson, LAW OFFICES, Nashville, Tennessee, for Appellant. Keli J. Oliver, METROPOLITAN NASHVILLE DEPARTMENT OF LAW, Nashville, Tennessee, for Appellee.

     GILMAN, J., delivered the opinion of the court, in which COLE, J., joined. WHITE, J. (pp. 11-13), delivered a separate dissenting opinion.

_____

**OPINION**

_____

     RONALD LEE GILMAN, Circuit Judge. Trudy Griffin was brought to the Davidson County Criminal Justice Center after she was arrested for disorderly conduct. When Griffin created a disturbance while speaking with a nurse at the Center, two corrections officers, Darrell Hardrick and Pamela Rutledge, each took one of her arms and

1

attempted to guide Griffin away from the nurse's station.  Griffin at that point began struggling with the officers, causing Hardrick to perform a "leg-sweep maneuver" to bring Griffin to the floor so that she could be handcuffed and taken back to her holding cell.  As Griffin fell to the floor, however, Rutledge tumbled with her.  Rutledge accidentally landed on one of Griffin's legs, breaking Griffin's tibia.

Griffin sued Hardrick over the incident, alleging an excessive-force claim under 42 U.S.C. § 1983 as well as a state-law claim for battery.  The district court granted Hardrick's motion for summary judgment, holding that no reasonable jury could find that Hardrick had intended the unnecessary and wanton infliction of pain when he tripped Griffin.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.     Factual background

Griffin was arrested on August 20, 2005 for disorderly conduct and resisting arrest. She was transported to the Davidson County Criminal Justice Center (Center) for booking. While she was in a holding cell at the Center, Griffin asked permission to go to the nurse's station.  After permission was granted, she walked down the hall to speak with a nurse about bruises on her back and arms.  Griffin repeatedly demanded that she be transported to a local hospital so that she could be treated for these injuries.  When the nurse told Griffin that she would not be taken to a hospital, Griffin refused to take "no" for an answer and began raising her voice with the nurse.  At this point, Hardrick, a corrections officer with the Davidson County Sheriff's Office who was in charge of the booking area, approached Griffin.

Both parties agree that "Hardrick observed [Griffin] acting in a non-compliant manner with regard to the instructions she received from the nurse," and that Griffin "walked away from Hardrick when he attempted to speak with her about the situation."  Griffin claims that as she walked away, Hardrick threatened her by saying that "she was going to live in his hell" and that she "was his bitch."  Hardrick then took hold of one of Griffin's arms, but Griffin attempted to pull away. Griffin claims that she told Hardrick to "watch her arms" because they were sore from being bruised earlier.

At that point, Hardrick asked Rutledge, another corrections officer at the Center, to assist with the situation. When Rutledge reached for Griffin's other arm, Griffin pulled her arm away (although she contends that she pulled away only "a little bit"). Hardrick and Rutledge then began leading Griffin down the hall toward her holding cell. Griffin claims that she was not struggling, resisting, or acting aggressively. She asserts that Hardrick nevertheless suddenly tripped her, causing her to fall to the floor. This in turn caused Rutledge to accidentally fall on top of her, which fractured Griffin's tibia.

Hardrick, on the other hand, contends that Griffin was jerking and attempting to get away. This prompted him to perform a "leg-sweep maneuver," typically used by officers to bring a noncompliant individual to the ground with the least amount of force necessary. He does not dispute, however, that Rutledge accidentally fell on Griffin's leg as a result of the leg sweep. After Griffin was handcuffed on the ground, other Center employees carried her into the holding-cell area. An ambulance was then called to the Center for the purpose of taking Griffin to the hospital, where she required surgery, eight screws, and a metal plate to fix her broken tibia.

A security camera caught the incident on videotape. The video establishes that Griffin approached the nurse's station and remained there for just under 10 minutes, alternating between standing at the window and sitting in a chair placed by the station. She can be seen motioning and waiving her arms at various points throughout her conversation with the nurse. Hardrick walked toward Griffin and spoke with her for approximately 20 seconds before Rutledge approached the nurse's station and stood a few feet away from Hardrick and Griffin.

After another 10 seconds, Griffin began to walk away from Hardrick, who then reached out to take her right arm. Griffin attempted to jerk her arm away, but Hardrick maintained his grip, and Rutledge stepped in to take Griffin's left arm. After a second or two of struggling with Griffin outside the nurse's station, Hardrick and Rutledge began to escort her down the hallway, which she resisted. Hardrick then stuck out his leg to trip Griffin. At this point, Griffin fell to the floor, and Rutledge tumbled on top of her.

**B.      Procedural history**

In May 2006, Griffin filed a lawsuit in a Tennessee state court against Hardrick and the Metropolitan Government of Nashville and Davidson County (Metro), alleging a claim of battery under the Tennessee Governmental Tort Liability Act. *See* Tenn. Code Ann. §§ 29-20-101 to -408. Griffin later dismissed her claim against Metro, but added an excessive-force claim against Hardrick pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action against those who violate a person's constitutional rights while acting under color of state law. This caused Hardrick to timely remove the case to the United States District Court for the Middle District of Tennessee.

Hardrick subsequently moved for summary judgment. In response to Griffin's § 1983 claim, he argued that not only was he entitled to qualified immunity, but that Griffin's claim could not succeed on the merits because Hardrick's use of force did not constitute the wanton infliction of pain. Hardrick further contended that he used only the amount of force necessary to subdue Griffin, so that her battery claim was likewise without merit.

The district court granted Hardrick's motion for summary judgment in June 2009. Because the court concluded that no reasonable jury could find that Hardrick's conduct constituted the wanton infliction of pain, it did not address Hardrick's qualified-immunity argument. The court also decided that where the identical use of force leads to both a § 1983 claim and a state-law battery claim, the same standard applies to both causes of action. It therefore granted summary judgment to Hardrick on Griffin's state-law battery claim as well. Griffin has timely appealed.

## II.  ANALYSIS

**A.      Standard of review**

We review de novo a district court's grant of summary judgment. *ACLU of Ky. v. Grayson County*, 591 F.3d 837, 843 (6th Cir. 2010). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the district court must draw all reasonable inferences in favor of the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.      Griffin's § 1983 claim**

Section 1983 prohibits a person "acting under color of state law" from depriving an individual "of a right secured by the Federal Constitution or laws of the United States." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Griffin's complaint alleged that Hardrick violated § 1983 by using excessive force against her in violation of the *Fourth* Amendment. The district court, however, interpreted her claim as alleging a violation of the *Fourteenth* Amendment, and Griffin does not dispute this characterization on appeal.

Prisoners are protected from the use of excessive force by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). As a pretrial detainee, however, Griffin's rights stem from the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). The law is unsettled as to whether the analysis for a Fourteenth Amendment excessive-force claim and an Eighth Amendment excessive-force claim is the same. *See Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("[T]here is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does . . . ."). *Compare Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (applying the Eighth Amendment standard to a pretrial detainee's excessive-force claim under the Fourteenth Amendment), *with Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996) ("Since [the protection of the Fourteenth Amendment] extends beyond the prohibition of merely 'cruel and unusual' punishment, pretrial detainees must arguably be afforded a higher standard than that provided by the Eighth Amendment.").

In the instant case, however, both parties and the district court relied on this court's unpublished decision in *Watkins v. Evans*, Nos. 95-4162, 95-4341, 1996 WL 499094, at *2 (6th Cir. Sept. 3, 1996), which held that the standards are the same. Because Griffin does not seek to invoke the potentially broader protections of the Fourteenth Amendment, we will

analyze her claim under the Eighth Amendment standard.  *See Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (analyzing a pretrial detainee's excessive-force claim under the same standard as an Eighth Amendment excessive-force claim where the detainee did not seek to invoke "any safeguards the Fourteenth Amendment provides beyond those it shares with the Eighth Amendment").

The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain."  *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (citation omitted).  In other words,

> [t]o ascertain whether excessive force was used under the Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Such a claim has both an objective and a subjective component.  The objective component requires that the pain be serious.  The subjective component requires that the offending, non-penal conduct be wanton.

*Watkins*, 1996 WL 499094, at *2 (citations omitted).

Hardrick does not dispute that Griffin suffered serious pain, so the objective element is satisfied.  We must therefore determine if a genuine issue exists as to whether Hardrick's conduct in using the leg-sweep maneuver on Griffin was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *See id.*

As an initial matter, Griffin argues that the district court erred in considering the videotape when ruling on Hardrick's motion for summary judgment.  The Supreme Court, however, has held that a court may properly consider videotape evidence at the summary-judgment stage.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that, based on videotape evidence, a police officer did not use excessive force in ramming a fleeing suspect's car).  Moreover, the reasonableness of a defendant's actions is an appropriate matter to determine on summary judgment.  *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008) (explaining that *Scott*

"instructs us to determine as a matter of law whether the events depicted on [a] video, taken in the light most favorable to [the nonmoving party], show that the Officers' conduct was objectively reasonable"). The district court thus properly considered the videotape evidence in determining whether Hardrick's actions were wanton.

Turning now to whether Hardrick's use of force was excessive, this court has previously cautioned that an official's decision to use force is entitled to deference:

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (first alteration in original) (citations and internal quotation marks omitted). The issue is therefore not whether the use of force was absolutely necessary in hindsight, but "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

Griffin does not dispute that she was acting in a noncompliant manner toward the nurse, that she walked away from Hardrick while he was speaking with her, and that she attempted to jerk her arm away from Hardrick. As is evident from the video, Hardrick was calm and nonaggressive during his initial conversation with Griffin. He stood at least a foot away from Griffin and spoke with her for about 30 seconds before ever touching her. Most importantly, the video establishes that Griffin was clearly struggling against both Hardrick and Rutledge before Hardrick employed the leg-sweep maneuver.

The fact that Griffin had been engaged in a loud, lengthy, and animated conversation with the nurse gave Hardrick a reasonable basis to believe that force would be necessary to control Griffin. Similarly, Griffin was struggling against Hardrick and Rutledge as they attempted to lead her away from the nurse's station, giving Hardrick a plausible reason to believe that force was necessary to bring Griffin to the floor so that she could be handcuffed

and taken back to her holding cell.  Hardrick's initial calm demeanor with Griffin suggests that he was not seeking to wantonly inflict pain on her, but was attempting to bring her under control.

Griffin does not dispute that Hardrick was in compliance with all relevant Center policies on the use of force, and she does not dispute Hardrick's contention that he was acting according to his training when employing the leg-sweep maneuver.  Indeed, to counter the fact that Hardrick was responding to the situation as trained, Griffin argues only that the opinion of the subject-control instructor for the Davidson County Sheriff's Office—that the leg-sweep maneuver was proper under the circumstances—was *based on the video*, which testimony she claims would invade the province of the jury and should therefore have been excluded from consideration on summary judgment.

But as discussed above, a court may properly consider videotape evidence at the summary-judgment stage, *Scott*, 550 U.S. at 380-81, so an expert opinion based on such evidence is appropriate, *see* Fed. R. Evid. 702; *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 663 (6th Cir. 2005) (holding that an expert opinion is permitted at the summary judgment stage so long as the opinion is not "a conclusory assertion about ultimate legal issues" (citation omitted)).  The fact that Hardrick was acting according to established procedures suggests that he had not undertaken the leg-sweep maneuver in a wanton manner, but was acting as he was trained while attempting to gain control of Griffin.  Moreover, there is no basis whatsoever to infer that Hardrick intended to use such force as would break Griffin's leg.  The force that did so came solely from the unfortunate accident of Rutledge collapsing on Griffin as they both fell to the floor.  These circumstances do not support a § 1983 claim for the wanton infliction of pain on the part of Hardrick.

In response to the adverse ruling by the district court, Griffin argues that she presented several genuine issues of material fact sufficient to defeat Hardrick's motion for summary judgment.  Griffin, for example, contends that "Hardrick never denied that Griffin received injuries to her arms before coming into the [Center]," and that he "never denied that he made threats towards Griffin that 'she was going to live in his hell' and that she 'was his bitch.'"  But these alleged threats do not create a genuine issue of *material* fact under the particular circumstances here because the videotape shows that Griffin was still struggling

with the officers at the time Hardrick employed the leg-sweep maneuver. So at that moment, Hardrick had a reasonable basis to believe that further force was necessary to control Griffin, even if he had earlier made the alleged generalized threats against her.

Griffin next argues that she was walking away because she was scared of Hardrick and wanted to return to her holding cell, thus creating a genuine issue of material fact. But this allegation is not material even if it is true (which seems doubtful given Hardrick's calm demeanor as shown on the videotape when he initially interacted with Griffin). Whether or not she felt that she had a good reason for walking away, Griffin was still noncompliant with the nurse and was resisting Hardrick and Rutledge before Hardrick used the leg-sweep maneuver. Moreover, Griffin has never contended that she communicated her alleged motivation to Hardrick, so her reason for noncompliance is irrelevant as to whether Hardrick reasonably thought that force was necessary to bring Griffin under control.

Other issues cited by Griffin are clearly contradicted by the record. She claims that Hardrick tripped her without provocation and that at no time did she resist either Hardrick or Rutledge. To the contrary, the video clearly shows Griffin resisting the officers' efforts to lead her down the hallway and her efforts to break away from them.

The district court thus did not err in granting Hardrick's motion for summary judgment on Griffin's § 1983 excessive-force claim. Although we consider this to be a close case, we ultimately conclude that no reasonable jury could find that Hardrick "evinced such wantonness . . . as is tantamount to a knowing willingness" that Griffin's injury occur. *See Whitley v. Abers*, 475 U.S. 312, 321 (1986). We therefore need not decide the merits of Hardrick's argument that he is entitled to qualified immunity.

**C.      Griffin's state-law battery claim**

In addition to her § 1983 claim, Griffin alleged a state-law battery claim against Hardrick. Griffin brought this claim under the Tennessee Governmental Tort Liability Act, which permits individuals to bring a cause of action against governmental employees who allegedly commit intentional torts. *See Baines v. Wilson County*, 86 S.W.3d 575, 583 n.5 (Tenn. Ct. App. 2002). Griffin's appellate brief, however, does not mention her battery claim. Indeed, her Statement of the Case references only an excessive-force violation against

Hardrick pursuant to § 1983. Nor was her battery claim mentioned at oral argument. She has therefore likely abandoned this claim on appeal. *See Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003) ("An appellant waives an issue when he fails to present it in his initial briefs before this court."). *But see Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 673 (6th Cir. 2008) (holding that where the same analysis applies to a plaintiff's federal and state-law causes of action, a defendant does not waive its defense to the state-law claim by failing to present the state-law claim on appeal if it argued the federal claim).

But even if Griffin has not abandoned this claim, it fails on the merits. Where a plaintiff asserts a battery claim under Tennessee law that arises out of the same use of force as her § 1983 excessive-force claim, the analysis is the same for both causes of action. That is, "whether the analysis concerns whether an officer violated a plaintiff's constitutional rights by using excessive force or whether the analysis concerns whether an officer committed state-law battery by using force that was 'clearly excessive,' the same principles . . . are applied." *Lee v. Metro. Gov't of Nashville & Davidson County*, 596 F. Supp. 2d 1101, 1118 (M.D. Tenn. 2009) (holding that officers entitled to summary judgment on a § 1983 excessive-force claim were automatically entitled to summary judgment on the Tennessee common-law battery claim); *see also Harris v. Metro. Gov't of Nashville*, No. 3:06-0868, 2007 WL 4481176, at *9 (M.D. Tenn. Dec. 18, 2007) ("[T]he plaintiff has set forth adequate grounds for his [§ 1983] claim of excessive force against each of the officers. Because Tennessee courts apply the same 'excessive force' principles to assault and battery claims against police officers, the plaintiff has additionally set forth adequate grounds against each of the officers for assault and battery under Tennessee law."). We thus find no error in the district court's conclusion that because Hardrick was entitled to summary judgment on Griffin's § 1983 claim, he was also entitled to summary judgment on her state-law battery claim.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

_____

**DISSENT**

_____

HELENE N. WHITE, Circuit Judge (dissenting).  I respectfully dissent.  I agree that it is appropriate for the court to consider a video of the events when ruling on a motion for summary judgment, and to discount any allegations clearly rebutted by the video.  I do not, however, agree that the video in this case clearly undermines Griffin's account leaving no genuine issue of material fact.  I would reverse and remand for further proceedings.

In my view, the videotape does not "blatantly contradict[]" Griffin's version of the facts "so that no reasonable jury could believe" her, and therefore summary judgment was not appropriate.  *Scott v. Harris,* 550 U.S. 372, 380-81 (2007).  Under *Scott,* in determining whether there are material factual disputes, we must accept the facts as depicted in the video, even when contrary to a party's sworn testimony.  However, facts that are not clearly portrayed in the video remain entitled to an interpretation most favorable to the non-moving party.  *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995); *see Scott,* 550 U.S. at 380 (facts must be viewed in a light most favorable to non-moving party when there is a "genuine dispute as to those facts").  Accepting all events portrayed in the video as true, there remains a material factual dispute as to whether Hardrick performed the takedown maneuver maliciously and sadistically to cause harm, rather than "in a good-faith effort to maintain or restore discipline."  *Hudson v. McMillian,* 503 U.S. 1, 6 (1992).

In *Scott,* the Court found that the plaintiff's claim that he was driving in a "cautious and controlled" fashion was clearly rebutted by the video that showed him traveling upwards of 85 miles per hour on narrow roads, swerving around cars, crossing the double-yellow line, forcing other cars traveling in both directions to the side of the road, running multiple red lights, and driving in the left-turn-only lane.  *Id.* at 379-80.  The video here, however, does not definitively establish either what transpired prior to Hardrick executing the takedown maneuver, or that Hardrick did not act maliciously or wantonly in executing the maneuver.

Griffin contends that Hardrick told her "she was going to live in hell" and that she "was his bitch."  The video, which has no accompanying audio, does not contradict this allegation.  The district court's perception of the "calmness" of Hardrick's demeanor is not

incompatible with his having made these statements to Griffin, and thus, at this point in the litigation, we should assume he did. As the district court recognized, such statements "could indicate a 'sadistic' or 'malicious' state of mind at the time of the physical encounter." *See Wilson v. Seiter,* 501 U.S. 294, 302 (1991).

The majority concludes that "[m]ost importantly, the video establishes that Griffin was clearly struggling against both Hardrick and Rutledge before Hardrick employed the leg-sweep maneuver." I do not agree that the video shows that Griffin was struggling with the officers to an extent that no reasonable juror could conclude that Hardrick acted wantonly and maliciously in performing the takedown. The video does show that Griffin began walking away from Hardrick, and that she resisted his initial attempt to grab her arm. Griffin, however, contends that she did so because her arms were already sore and bruised, and that Hardrick's grip caused her additional pain. Indeed, Hardrick concedes that Griffin told him to "watch [her] arms."

The video is ambiguous, however, as to whether Griffin was continuing to struggle at the time of the takedown and, even if she was, whether Hardrick could plausibly have thought a takedown necessary under the circumstances. In the approximately eight second span from when Rutledge took hold of Griffin's other arm until Hardrick performed the takedown maneuver, Griffin can be seen continuing to talk with the two officers with no aggressive physical movement. Hardrick and Rutledge then pull her forward forcefully, sufficient to make her stumble. It appears that Griffin has almost regained her balance when Hardrick performs the takedown, and she continues to be restrained at both arms by the officers. Further, no other inmates were in the area, and a third corrections officer stood nearby observing and ready to intervene. *See Seiter,* 501 U.S. at 303 (whether conduct "can be characterized as 'wanton' depends upon the constraints facing the *official*") (emphasis in original).

To be sure, prison officials are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order." *Whitley v. Albers,* 475 U.S. 312, 321-22 (1986). But such deference "does not insulate from review actions taken in bad faith and for no legitimate purpose." *Id.* at 322. A jury viewing the events portrayed in the video in light of the statements Griffin attributes

to Hardrick could reasonably conclude that Hardrick could not plausibly have thought that the use of the takedown maneuver, although executed properly, was necessary, and that, in fact, he performed it solely to inflict pain, even if not of the degree that ultimately occurred.