**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0065n.06

No. 13-3458

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| TERESA BOOHER, mother and natural guardian, obo T.W., | ) ) ) | **FILED**<br>*Jan 24, 2014*<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) |  |
| v. | ) ) |  |
| | ) | On Appeal from the United States |
| CHRIS MONTAVON, Individually; | ) | District Court for the Southern |
| DONARD BOWLING; KIRBY LAWSON, | ) | District of Ohio |
| Individually, | ) |  |
| | ) |  |
| Defendants-Appellees. | | |

_____/

**Before: GUY, GIBBONS, and ROGERS, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Plaintiff Teresa Booher brought this action under 42 U.S.C. § 1983 on behalf of her then-minor son Todd Webster, alleging violation of his Eighth and Fourteenth Amendment rights during an altercation he had with staff while in the custody of the Ohio Department of Youth Services (ODYS). Specifically, the complaint alleged: (1) that Juvenile Corrections Officer Donard Bowling used excessive force by violently twisting Webster's hand and fracturing his left wrist (count 1); and (2) that Juvenile Corrections Officer Kirby Lawson and Unit Manager Chris Montavon acted with deliberate indifference in failing to protect Webster from Bowling's use of excessive force (count 2). Plaintiff appeals from the

district court's entry of summary judgment in favor of all three defendants. After a de novo review of the record, we affirm.[1]

## I.

The altercation at issue occurred on November 9, 2009. On that date, Webster was a minor being held in the "lock-down" unit of the Ohio River Valley Juvenile Correctional Facility, a maximum security facility, after he attempted to escape from another institution. At approximately 11:30 a.m., Webster was escorted to Montavon's office to discuss the consequences of his having climbed into the ceiling rafters the previous day. Webster testified that he climbed into the ceiling because he was trying to get reclassified to "red phase" in order to stay in the lock-down unit. Montavon stood by his desk, while Webster was seated in handcuffs on a chair in Montavon's office. Lawson, Bowling, and other Juvenile Corrections Officers (JCOs) were outside Montavon's office.

There is no dispute that Montavon informed Webster that due to his conduct the previous day, he was being moved to a different room to remove him from the influence of another youth. Nor is there any dispute that Webster flatly refused to be moved. There is conflicting evidence, however, including from Webster himself, about the manner in which Webster refused and how he and Montavon fell to the floor together.

Defendants offered evidence that Webster used profanity to loudly declare that he was not moving, flipped over the chair, charged into Montavon, and fell to the floor with Montavon landing on top of him. Similar accounts of this exchange were given to an investigator within a week of the incident by both Webster and another JCO who witnessed it. However, Webster

---

[1]We use Webster's name since he is no longer a minor, as well as the correct spelling of JCO Bowling's first name.

recanted that portion of his statement, claiming that he had lied out of fear of retaliation, and gave the following account during his deposition.

That is, Webster flatly refused to be moved to another room and Montavon responded by saying, "you can go the easy way or you can go the hard way." Webster admittedly answered that it would have to be "the hard way," after which Montavon made a hand signal to staff and took Webster in a headlock. Webster said, "that's when I got to resisting and we fell to the floor and that's when staff came in." As he continued to kick and struggle, Lawson held Webster's right arm in a "C-grip" and Bowling took Webster's left arm. Webster said he felt punches to the back of his head he attributed to Montavon, but recanted this statement when interviewed by the investigator. The complaint did not allege that the application of force up to this point was either unnecessary or excessive, although Webster relies on this testimony to support an inference that Montavon and Lawson were deliberately indifferent to the excessive force that followed.

Specifically, Webster testified that as he struggled with the defendants on the floor, Bowling held his left arm and violently bent his left wrist until Webster "felt it pop." Webster stated that he believed Bowling "was trying to break it." When he screamed about his wrist, Bowling allegedly said, "ain't this what you've been waiting for?" Webster also claimed that his wrist was retwisted as he was escorted to his room, and that he believed Bowling was the one who did it. Webster's earlier statement to the investigator was consistent in that it accused Bowling of bending Webster's left hand until his wrist "popped," but differed to the extent that it attributed the accompanying comment to Lawson rather than to Bowling. Also, Webster specifically denied that anyone had touched his injured wrist as he was being taken to his room.

Defendants offered evidence disputing Webster's claim of excessive force. Bowling denied that he twisted Webster's wrist at all; Lawson and Montavon stated that they did not see Bowling do so; and all three said that Webster did not complain specifically about his wrist until after he had been moved to his newly assigned room. There is no dispute that after Webster was escorted to his room, he was examined and transported to the hospital where he was treated for a broken wrist. The other relevant evidence was the uncontested medical opinion of John Bradley, M.D., Medical Director for the ODYS, which was based on his review of the medical records relating to this injury. Dr. Bradley explained that Webster's wrist injury was a "torus fracture," which is an incomplete fracture common in children because their bones are softer than those of adults. Dr. Bradley concluded "with a reasonable degree of medical certainty that a torus fracture would have been caused by impact and not by twisting," and that "[t]he type of injury suffered by Todd Webster would be consistent with his falling on his wrist."[2]

This action was filed on behalf of Webster in November 2010, and alleged that he had exhausted the relevant administrative procedures. After the close of discovery, defendants filed a motion for summary judgment. The magistrate judge recommended that summary judgment be granted with respect to the failure to protect claims against Montavon and Lawson but denied with respect to the excessive force claims against Bowling. Those recommendations were adopted in part and rejected in part, and the district court concluded that all three defendants were entitled to summary judgment because no rational trier of fact could find in plaintiff's favor. The district court also found that defendants were entitled to qualified immunity because

---

[2]A torus fracture is "a fracture in which there is a localized expansion or torus of the cortex, with little or no displacement of the lower end of the bone." *Dorland's Illustrated Medical Dictionary* 618 (25th ed. 1974). Other sources refer to a torus fracture as a buckle fracture specific to wrist fractures in children in which the bone compresses creating a buckle or bump on the side and the opposite side of the bone appears normal.

they "acted reasonably in the face of a difficult, rapidly developing altercation." Judgment was entered accordingly, and this appeal followed.

## II.

We review the district court's grant of summary judgment do novo. *Griffin v. Hardrick*, 604 F.3d 949, 952-53 (6th Cir. 2010). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Id.* at 953. A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Webster's § 1983 claims depend on establishing that the defendants—who were unquestionably acting under color of state law—deprived him of a right secured by the Eighth Amendment, which prohibits the unnecessary and wanton infliction of pain against prisoners. *See West v. Akins*, 487 U.S. 42, 49-50 (1988); *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Liability for failing to protect a prisoner requires proof that the defendant knew of and subjectively disregarded an excessive risk to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As the district court recognized, the liability of each defendant must be assessed on the basis of his own actions. *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008).

## A.     Excessive Force

An Eighth Amendment excessive force claim has both an objective and a subjective component. *Griffin*, 604 F.3d at 953. To determine whether the subjective component is met, the question is "'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'" *Williams v.*

*Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992));

*see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Considerations relevant to this subjective

component may include "'the need for the application of force, the relationship between the need

and the amount of force that was used, and the extent of injury inflicted.'" *Williams*, 631 F.3d at

383 (quoting *Whitley*, 475 U.S. at 321). The objective component asks whether the pain inflicted

was "sufficiently serious," and that component is met when force is used maliciously and

sadistically to cause harm whether or not significant injury is evident. *Id*.

Webster argues that summary judgment should not have been granted with respect to this

claim because the conflicting evidence was sufficient to create a genuine issue of material fact

for trial. Defendants contend that no genuine dispute can exist given Webster's contradictory

and inconsistent accounts of the incident and his admission that he lied to the investigator about

it. It is clear, however, that to completely discount Webster's testimony on that basis would

require credibility determinations that we may not make in reviewing a motion for summary

judgment. *See Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010). As we explained in

*Schreiber*, "[t]his is the case even when the nonmovant's account is contradictory." *Id*. (citing

cases). The question then is whether, when the evidence is viewed in the light most favorable to

Webster, a genuine issue of material fact exists. *Anderson*, 477 U.S. at 248.

Despite Webster's assertion to the contrary, the factual dispute concerning the exchange

with Montavon that precipitated the use of force is not material to the excessive force claim

against Bowling. Whether Webster flipped the chair and lunged at Montavon, or simply refused

to be moved and declared that he would have to be moved "the hard way," Webster's response

clearly indicated that force would be needed to compel his compliance. Assuming, as we must,

that Webster did not pose a threat to Montavon, Webster did not deny that some force was necessary.

That brings us to the conflicting testimony about whether or not Bowling twisted Webster's left hand with sufficient force to fracture his wrist as all three defendants struggled with him on the floor. By all accounts, Webster and Montavon fell to the floor together; Lawson and Bowling joined in Montavon's effort to control Webster as he continued to struggle and kick; and Webster's left wrist was fractured during the altercation that lasted less than five minutes. Webster's testimony that Bowling violently bent his hand until something "popped" directly conflicts with Bowling's testimony that he did not twist Webster's hand or wrist at all.

Ordinarily, in construing the evidence on summary judgment in the light most favorable to the nonmovant, the court adopts the plaintiff's version of the facts. *Coble v. City of White House*, 634 F.3d 865, 868 (6th Cir. 2011). If we were to do so here, there would be a genuine issue of material fact on the question of whether Bowling applied force maliciously and sadistically for the purpose of causing harm.

When, however, the parties tell conflicting stories, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). This applies not only when there is videotape evidence, but whenever the nonmoving party's version is "so blatantly contradicted by objective evidence in the record that it fails to create a genuine issue of material fact for trial." *Coble*, 634 F.3d 869. Here, without making a credibility determination, the district court found that Webster's version of Bowling's actions was blatantly contradicted by the uncontroverted medical evidence showing that "the type of fracture [Webster] suffered resulted from an impact consistent with a fall, and not by

being twisted." We agree. Because Webster's version rested on a showing that Bowling twisted Webster's hand with sufficient force to cause the fracture, a fact that was blatantly contradicted by the only medical evidence that had been presented. Webster's testimony in that regard was insufficient to create a genuine issue of material fact for trial. *See Griffin*, 604 F.3d at 956.[3]

**B.      Failure to Protect**

To establish liability under § 1983 against either Montavon or Lawson for failing to protect Webster from the use of excessive force by Bowling, Webster must prove deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. Deliberate indifference is demonstrated if the defendant "knows of and disregards an excessive risk to inmate health or safety," which requires that he "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Webster must show that the mistreatment was objectively serious, and that the defendant subjectively ignored the risk to his safety. *Id*. at 834.

The district court, adopting the magistrate judge's recommendations, found no evidence that Montavon or Lawson was more than negligent in failing to protect Webster from the application of excessive force by Bowling. On appeal, Webster argues that a genuine issue of material fact existed because a reasonable trier of fact could conclude (1) that by saying, "you can do this the easy way or the hard way," Montavon implied a threat of physical harm, and (2) that the signal to staff before Lawson and Bowling responded was intended to communicate that they should intentionally harm Webster. Webster also relies on his testimony that Montavon punched the back of his head during the struggle to argue that a jury could conclude Montavon was at least indifferent to his safety. Even by Webster's account, his response to Montavon's

---

[3]Nor is the vague testimony that someone twisted the fractured wrist as he was escorted to his room sufficient to support a finding that it was done maliciously and sadistically for the purpose of causing harm.

statement was to clearly indicate that the use of force would be necessary to move him to the newly assigned room and nothing about the question or the signal to staff permits an inference that force would not be applied in good faith to maintain or restore discipline. Webster admitted that he struggled and kicked and did not assert a claim of excessive force against Montavon or Lawson. Even if we were to find a genuine issue of material fact existed as to whether Bowling used excessive force during the struggle, there was insufficient evidence to lead a rational trier of fact to conclude that either Montavon or Lawson knew of and disregarded a substantial risk that Bowling would do so.

**AFFIRMED**.