RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DILLON BURNETT,

　　　　　*Plaintiff-Appellant/Cross-Appellee*,

　　*v.*

JOSH GRIFFITH,

　　　　　*Defendant-Appellee/Cross-Appellant*.

Nos. 21-1242/1293

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cv-00257—Hala Y. Jarbou, District Judge.

Argued: March 8, 2022

Decided and Filed: May 12, 2022

Before: GILMAN, STRANCH, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** William F. Piper, WILLIAM F. PIPER, PLC, Portage, Michigan, for Appellant/Cross-Appellee. Jeffrey C. Gerish, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee/Cross-Appellant. **ON BRIEF:** William F. Piper, WILLIAM F. PIPER, PLC, Portage, Michigan, for Appellant/Cross-Appellee. Jeffrey C. Gerish, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee/Cross-Appellant.

─────────────────

## OPINION

─────────────────

RONALD LEE GILMAN, Circuit Judge. Dillon Burnett brought an Eighth Amendment claim under 42 U.S.C. § 1983, as well as state-law claim for assault and battery, against Sergeant

Josh Griffith, a Van Buren County corrections officer. The claim is based on Sergeant Griffith's alleged use of excessive force while Burnett was in custody at the Van Buren County Jail.

The district court granted Sergeant Griffith's motion for summary judgment. It concluded that, although the evidence could allow a reasonable jury to find that Sergeant Griffith had used excessive force in bringing Burnett under control, the sergeant was nevertheless entitled to qualified immunity because he did not have fair warning that his actions were unconstitutional. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

**A.    Factual background**

Burnett was arrested and charged with a failure to appear for a work-detail program, in violation of a guilty-plea sentencing condition related to a separate charge. He was held in custody at the Van Buren County Jail in Van Buren County, Michigan, where Sergeant Griffith was on duty as the booking officer.

At Burnett's arraignment hearing, his behavior was erratic enough for the district court to hold Burnett in contempt of court and sentence him to jail. After his arraignment hearing, Burnett was handcuffed to a bench in the booking area. Burnett unscrewed the bolt that he was handcuffed to and pulled his arms out from behind his back. Another officer alerted Sergeant Griffith, who resecured Burnett to the bench. Burnett then requested to speak with a mental-health representative, who later advised Sergeant Griffith that Burnett should be placed on suicide watch. Sergeant Griffith and another corrections officer, Paul Tessar, then took Burnett to a separate room where they placed him in an anti-suicide gown.

After Burnett put on the gown, Sergeant Griffith and Officer Tessar informed him that they would be escorting him to a cell for suicide watch. The use-of-force incident occurred during this escort and was caught on video. Officer Tessar enters the video frame first. He walks at a normal pace with paperwork in hand. Ann Niemi, a mental-health staffer, is also present, standing behind a filing cabinet at the bottom of the video frame. Before proceeding

toward the room's exit door, Officer Tessar briefly pauses to assemble the paperwork and checks over his shoulder, likely looking toward Sergeant Griffith and Burnett.

Burnett and Sergeant Griffith enter the video frame a second or two later. Sergeant Griffith is seen holding on to Burnett's arms, which are handcuffed behind his back, directing Burnett toward the exit door. As Burnett and Sergeant Griffith move past a holding bench shown in the top right of the video frame, Burnett pivots his body away from Sergeant Griffith and toward the bench. Burnett continues to move his body forward in an attempt to break away from Sergeant Griffith. In response, Sergeant Griffith maintains his hold on Burnett's arms and tries to pull Burnett backward. Burnett, however, continues to push his body forward and away from Sergeant Griffith. At this point, Officer Tessar becomes aware of Burnett's movements and starts to move toward Sergeant Griffith and Burnett. Simultaneously, Sergeant Griffith propels Burnett backwards, shifting Burnett to the left so that he appears to face the floor, and takes Burnett down to the floor with significant force. Sergeant Griffith does not recall whether he gave any verbal warning before he took Burnett down, although he acknowledges that he did not first seek any assistance from Officer Tessar.

After taking Burnett down, Sergeant Griffith kneels over Burnett in an effort to control him. Burnett continues moving his arms and legs. Officer Tessar joins Sergeant Griffith in a kneeling position to assist with holding Burnett in place. Burnett claims that he temporarily lost consciousness. When he regained consciousness, Burnett recalls lying face down on the floor with several people standing around him.

Sergeant Griffith called for assistance on the jail radio when he noticed that Burnett had a laceration on his head and was bleeding. Other officers arrived on the scene, where they tended to Burnett's head with paper towels and gauze. About four minutes later, a nurse arrived to assess Burnett and clean his head injury. Her report reflects a laceration on Burnett's forehead. She referred him to the Lake View Hospital Emergency Department for further evaluation. Officers later assisted Burnett to a standing position for transport to the hospital.

According to his medical records, Burnett reported moderate pain in the left-frontal part of his head as well as radiating pain behind his left ear. Sergeant Griffith's Use of Force Report

noted that Burnett told Sergeant Griffith that his head and neck hurt and that he was experiencing facial numbness. At the hospital, Burnett received three stitches to close the laceration on his forehead, which was one centimeter in length and two millimeters in depth. Burnett was discharged in good condition, returned to the jail, and placed on suicide watch. Since the incident, Burnett claims that he suffers from post-traumatic stress disorder, severe migraines that occur a couple of times per month, lower back pain, and possible changes in his personality.

**B.      Procedural background**

Sergeant Griffith moved for summary judgment, seeking to dismiss all of Burnett's claims based on the defense of qualified immunity. The motion was referred to a magistrate judge. In her first Report and Recommendation (R&R), the magistrate judge recommended that the district court grant Sergeant Griffith's motion in its entirety. Although the R&R concluded that Burnett satisfied the objective component of an Eighth Amendment claim based on his injuries and pain, the magistrate judge concluded that Burnett did not submit any "evidence that Griffith maliciously and sadistically intended to inflict pain on Burnett," which is necessary to satisfy the subjective component of Burnett's Eighth Amendment and state-law claims.

Burnett timely objected to the magistrate judge's R&R. Agreeing with Burnett's objection that the R&R erred in holding that the record contained no evidence that Sergeant Griffith had maliciously and sadistically intended to harm him, the district court rejected the magistrate judge's conclusion. The court determined that, viewing the footage of the incident in question in the light most favorable to Burnett, "a reasonable jury . . . could infer that Griffith acted with the requisite intent" necessary to sustain Burnett's claims. Because the magistrate judge had not addressed all aspects of the qualified-immunity defense, the court then remanded the case for further consideration.

In a supplemental R&R, the magistrate judge recommended that the district court conclude that Sergeant Griffith was not entitled to qualified immunity as a matter of law. The supplemental R&R addressed only the issue of whether a reasonable officer in Sergeant Griffith's shoes would have been on notice that his actions violated Burnett's clearly established Eighth Amendment right to be free from the use of excessive force. Based on this court's

decision in *Cordell v. McKinney*, 759 F.3d 573 (6th Cir. 2014), the magistrate judge reasoned that an officer has "fair and clear warning that throwing or slamming a handcuffed prisoner headfirst to the ground, particularly when other options were available to moderate the amount of force used, was an unreasonable method of regaining control over a prisoner."

Once again the district court rejected the R&R, concluding that Sergeant Griffith was entitled to qualified immunity because he was not on fair warning that his actions violated Burnett's rights under the Eighth Amendment. The court concluded that "the facts in *Cordell* are too dissimilar to the facts in this case to conclude that Sergeant Griffith violated a clearly established right." Accordingly, the court granted Sergeant Griffith's motion for summary judgment and dismissed Burnett's Eighth Amendment claim on qualified-immunity grounds. The court then declined to exercise supplemental jurisdiction over Burnett's state-law claim for assault and battery against Sergeant Griffith.

Burnett appeals the district court's judgment that Burnett had not satisfied the "clearly established" prong necessary to overcome Sergeant Griffith's qualified-immunity defense. And Sergeant Griffith cross-appeals the court's first and second orders to the extent that they concluded that a reasonable jury could find that Sergeant Griffith acted with the malicious intent to harm Burnett.

## II. ANALYSIS

### A. Whether Sergeant Griffith is entitled to qualified immunity as a matter of law

Qualified immunity shields government officials from civil-damages liability for violations of "clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has articulated a two-prong test to determine whether an official is entitled to qualified immunity: The first prong questions whether the facts, "taken in the light most favorable to the party asserting the injury, . . . show that the officer's conduct violated a constitutional right." *Jones v. Clark County*, 959 F.3d 748, 766 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). And the second prong determines "whether the right is clearly established." *Id.* District courts and courts of appeals have discretion "in deciding which of the

two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, we focus on the second prong.

This court "reviews a grant of summary judgment on the basis of qualified immunity *de novo*." *Jones*, 959 F.3d at 765 (citing *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 346 (6th Cir. 2001)). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In the present case, even if we were to conclude that a reasonable jury could find that Sergeant Griffith violated Burnett's Eighth Amendment right to be free from the use of excessive force, we would still need to determine whether the state of the law, at the time of Sergeant Griffith's conduct, was sufficiently clear to a "reasonable official in the defendant's shoes" that he "would have understood that he was violating [the right in question]." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014); *see also Cordell v. McKinney*, 759 F.3d 573, 587 (6th Cir. 2014) (concluding that, although a "reasonable jury could find that Deputy McKinney violated Cordell's Eighth Amendment rights," the court must also analyze whether "those Eighth Amendment rights [were] clearly established as of [the date of the use-of-force incident]"). Because we ultimately conclude that Sergeant Griffith did not have fair warning that his specific conduct violated Burnett's Eighth Amendment right to be free from the use of excessive force, the circumstances of this case warrant addressing the "clearly established prong" first and obviate the need to address whether Sergeant Griffith in fact violated Burnett's rights under the Eighth Amendment.

The relevant inquiry is thus whether Sergeant Griffith had fair warning that propelling a handcuffed prisoner to the floor, in response to the prisoner's attempt to break free, was "an unreasonable method of regaining control of a prisoner in a [room] occupied only by other jail officials." *Cordell*, 759 F.3d at 588. In *Cordell*, the primary case relied on by Burnett, a prison officer was escorting Cordell through a jail hallway at a fast pace. *Id.* at 577. According to the security video, Cordell, who was handcuffed with his arms behind his back, "turn[ed] his head"

in an effort to face the officer. *Id.* at 578. In response, the officer rammed Cordell headfirst into a concrete wall, causing severe injuries. *Id.*

There are indeed similarities between the facts of *Cordell* and those in the present case. Both Cordell and Burnett were handcuffed and in an area of the jail where only jail officials were present. But unlike in *Cordell*, Burnett created an immediate exigency by pulling away from Sergeant Griffith in an attempt to break free from Sergeant Griffith's grasp. The act of breaking away from an officer's control is a far greater show of resistance than the act of turning toward an officer. Although Burnett was restrained by handcuffs with his arms behind his back, the video plainly establishes that Burnett was resisting control, which was never the situation with Cordell. The fact that Cordell was always under control was a key consideration in this court's ultimate holding that a reasonable jury could find that the prison officer in that case used excessive force. *Id.* at 584–88.

Another material fact that distinguishes *Cordell* from the present case is that, in the moments leading up to the use-of-force incident in *Cordell*, the prison officer and Cordell had engaged in a heated verbal exchange that caused the officer to display his taser in a threatening manner. *Id.* at 576–77. Sergeant Griffith, in contrast, did not display any aggression toward Burnett prior to Burnett's attempt to break free. Moreover, Sergeant Griffith did not receive a formal reprimand for his use of force, as did the officer in *Cordell*. *Id.* at 584.

In sum, the contours of the fair-warning requirement that were satisfied in *Cordell* do not extend to the circumstances of Burnett's case. *Cordell* makes clear that the Eighth Amendment includes the right to be free from a jail official's use of excessive force against a compliant prisoner who is handcuffed and in an area of the jail where only other jail officials are present. Whether the prisoner is under control can thus be characterized as an important determinate of the right established by *Cordell*. *See id.* at 588.

The video evidence here shows that Burnett was resisting control at the time that Sergeant Griffith used force to restrain him. *Cordell* thus cannot fairly be extended to this case to conclude that Sergeant Griffith had fair warning that his use of force to take Burnett to the floor, in response to an exigency created by Burnett, was a violation of Burnett's rights under the

Eighth Amendment. This is especially so because Sergeant Griffith had to take split-second action in response to Burnett's unexpected attempt to break free, and we must grant that split-second decision "wide-ranging deference." *See Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (explaining that because prison officials "'must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,' we must grant them 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'" (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992))).

Moreover, the other cases relied on by Burnett fail to establish that Sergeant Griffith had fair warning that his actions were unconstitutional. Two of these cases are from the Fifth Circuit. One is *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008), where the court held that a police officer violated the plaintiff's clearly established right to be free from the use of excessive force when, during an arrest, the officer slammed the plaintiff's face into a vehicle even though she was handcuffed, subdued, and not resisting arrest or attempting to flee. *Id*. at 501–02. The other Fifth Circuit case is *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), which affirmed the denial of qualified immunity where the plaintiff "posed no threat to the officers and yet was tased twice, including once after he was handcuffed and subdued while lying face down on the ground." *Id*. at 379. Along with our general rule against using out-of-circuit caselaw in the "clearly established" inquiry, *see Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020), neither of these cases is comparable to the circumstances in the case before us.

Burnett also relies on three Sixth Circuit cases to establish "that the act of a subject attempting to walk or pull away or refuse to comply is not sufficient resistance to justify[] slamming a subject into a hard object like a wall or a floor." But the cases cited by Burnett do not support his argument. The first cited case is *Bennett v. Krakowski*, 671 F.3d 553 (6th Cir. 2011), in which this court declined to exercise its jurisdiction over the defendants' appeal of a denial of summary judgment on qualified-immunity grounds because the defendants' "arguments . . . [were] based on contested facts that [were] pertinent to that determination." *Id*. at 559. Burnett next cites *Solomon v. Auburn Hills Police Department*, 389 F.3d 167 (6th Cir. 2004), which held that an officer used excessive force in attempting a leg-sweep maneuver on the

plaintiff when the plaintiff was not resisting arrest and was walking toward the officers as instructed. *Id*. at 174–75. Finally, Burnett cites *Smith v. Stoneburner*, 716 F.3d 926 (6th Cir. 2013), where this court concluded that a dispute of material fact remained as to whether the plaintiff was resisting arrest, but noting that if the plaintiff did resist arrest, then "the officers' force may well have been reasonable." *Id*. at 934 (citing *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)). There is no genuine dispute here that Burnett was resisting Sergeant Griffith's attempt to restrain him because the video footage captures Burnett's actions in doing so.

Sergeant Griffith in turn points to this court's decision in *Griffin v. Hardrick,* 604 F.3d 949 (6th Cir. 2010), to support his argument that his use of force was appropriate. *Griffin* is similar enough to the present case to support the conclusion that Sergeant Griffith did not have fair warning that his actions could be found to constitute excessive force. In *Griffin*, the plaintiff had been noncompliant with a jail-staff nurse and later resisted an officer's attempts to lead her back to a different area of the jail. *Id.* at 951–52. The court concluded that, in light of those circumstances, the officer had "plausible reason to believe that force was necessary to bring Griffin to the floor so that she could be handcuffed and taken back to her holding cell." *Id*. at 955.

As a final argument, Burnett contends that the Supreme Court's decisions in *McCoy v. Alamu*, 141 S. Ct. 1364 (2021) (vacating and remanding 950 F.3d 226 (5th Cir. 2020)), and *Taylor v. Riojas*, 141 S. Ct. 52 (2020) (per curiam), compel a ruling in his favor. We disagree. The Supreme Court's decisions in *Taylor* and, to a lesser extent, *McCoy* stand for the proposition that, when the conduct of a government official is so egregious that a constitutional violation is apparent, the Supreme Court does not require that a case be "directly on point" to satisfy the "clearly established" prong of the qualified-immunity analysis. *See Moderwell v. Cuyahoga County*, 997 F.3d 653, 660 (6th Cir. 2021) (discussing *Taylor* and explaining that qualified immunity can be denied without a prior case on point when "no reasonable correctional officer could have concluded that the challenged action was constitutional" (internal quotation marks omitted) (quoting *Taylor*, 141 S. Ct. at 53)).

In *Taylor*, the Supreme Court concluded that the Fifth Circuit erred in granting qualified immunity to prison officers that confined a prisoner in "shockingly unsanitary cells." *Taylor*, 141 S. Ct. at 53 (explaining that one cell was covered with feces "nearly floor to ceiling" and a second cell was "frigidly cold" and "equipped with only a clogged drain in the floor to dispose of bodily wastes"). The Court rejected the Fifth Circuit's reasoning that the officers "responsible for Taylor's confinement did not have fair warning that their specific acts were unconstitutional." *Id.* (internal quotation marks omitted) (quoting *Taylor v. Stevens*, 946 F.3d 211, 222 (5th Cir. 2019), *vacated sub nom. Taylor v. Riojas*, 141 S. Ct. 52 (2020)). Instead, the Court concluded that, when "[c]onfronted with the particularly egregious facts of this case, any reasonable officer should have realized that Taylor's conditions of confinement" were constitutionally impermissible. *Id*. at 54.

And in *McCoy*, a prison officer, without any justification, pepper-sprayed a prisoner who was locked in his cell. 950 F.3d 226, 229 (5th Cir. 2020), *vacated*, 141 S. Ct. 1364 (2021). The Fifth Circuit granted qualified immunity to the officer, reasoning that the law was not clearly established because it was not "beyond debate" that the officer broke the law by using pepper spray. *Id.* at 233 (explaining that it was not beyond debate that using pepper spray, despite no provocation, was an excessive use of force). In light of its decision in *Taylor*, the Supreme Court remanded the case to the Fifth Circuit for further consideration. *McCoy*, 141 S. Ct. at 1364.

Sergeant Griffith's actions were not so egregious as to obviate the requirement of identifying precedent that places "the statutory or constitutional question beyond debate" such that Sergeant Griffith was placed on fair warning that his conduct was unconstitutional. *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021) (quoting *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021)). And in further contrast to *Taylor* and *McCoy*, the video evidence in this case establishes that Sergeant Griffith's use of force was motivated by an exigency created by Burnett's actions. *Cf. Taylor*, 141 S. Ct. at 54 (noting that "[t]he Fifth Circuit identified no evidence that the conditions of Taylor's confinement were compelled by necessity or exigency").

Based on the foregoing, we conclude that the state of the law at the time that Sergeant Griffith acted did not provide him with fair warning that his actions would violate Burnett's Eighth Amendment right to be free from the use of excessive force. The district court

accordingly did not err in granting summary judgment in favor of Sergeant Griffith on qualified-immunity grounds.

**B.      Sergeant Griffith's cross-appeal**

We now turn to Sergeant Griffith's cross-appeal, which challenges the district court's two orders rejecting the magistrate judge's R&Rs and seeks to have Burnett's state-law claim dismissed on the merits.  "The duty of this court . . . is to decide actual controversies by a judgment which can be carried into effect, and not give opinions upon moot questions or abstract propositions[.]" *Wheeler v. City of Lansing*, 660 F.3d 931, 940 (6th Cir. 2011) (first alteration in original) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  Sergeant Griffith argues that the district court erred when it held that a genuine dispute of material fact exists as to whether he used excessive force in restraining Burnett.  But Sergeant Griffith has ultimately prevailed on his summary judgment motion under the "clearly established" prong of the qualified-immunity analysis, which makes the constitutional-violation issue presented by his cross-appeal moot.  *See id.* at 939–40 (dismissing as moot the defendant's cross-appeal challenging the district court's determination that a constitutional violation had occurred where the defendant was granted qualified immunity under the "clearly established" prong).  And Sergeant Griffith's cross-appeal regarding Burnett's state-law claim is moot because the district court declined supplemental jurisdiction over that claim.

**C.      Burnett's state-law assault-and-battery claim**

This leaves Burnett's remaining claim against Sergeant Griffith, which arises under state law.  We review a district court's decision to decline to exercise supplemental jurisdiction over a plaintiff's state-law claims under the abuse-of-discretion standard.  *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).  "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Rouster v. County of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).  Because the district court dismissed Burnett's federal-law claim at the summary judgment stage, we conclude that the court did not abuse its discretion in declining to exercise jurisdiction over Burnett's remaining state-law claim for assault and battery.  *See Wee*

*Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012) (finding no abuse of discretion where the district court declined to exercise supplemental jurisdiction over state-law claims after dismissing the federal claims).

## III.  CONCLUSION

For all the foregoing reasons, we **AFFIRM** the judgment of the district court and **DISMISS** Sergeant Griffith's cross-appeal as moot.