NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0235n.06

No. 16-6100

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 25, 2017
DEBORAH S. HUNT, Clerk

AMY ELIZABETH GUY,                        )
                                          )
         Plaintiff-Appellee,              )
                                          )
                                          )   On Appeal from the United States
v.                                        )   District Court for the Middle District
                                          )   of Tennessee
THE METROPOLITAN GOVERNMENT OF            )
NASHVILLE AND DAVIDSON COUNTY,            )
Tennessee,                                )
                                          )
         Defendant,                       )
                                          )
JANIE ROMINES,                            )
                                          )
         Defendant-Appellant.             )
                                          )
_____/

Before: GUY, CLAY, and GRIFFIN, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** A brief encounter between a corrections officer

and a pretrial detainee who was asking to see a nurse ended with the detainee being sprayed with

a chemical agent and charged with assaulting the officer. Amy Guy, the pretrial detainee, sued

Janie Romines, the corrections officer, alleging excessive force, deliberate indifference to serious

medical needs, unlawful arrest, and malicious prosecution under 42 U.S.C. § 1983. Officer

Romines brings this interlocutory appeal from the district court's denial of her motion for

summary judgment raising qualified immunity with respect to each of those claims. For the

reasons that follow, we affirm in part, reverse in part, and remand for further proceedings

consistent with this opinion.

**I.**

On September 11, 2013, Officer Romines was assigned to supervise 40-50 female inmates being held pending security classification in the O pod of the Davidson County Correctional Development Center in Davidson County, Tennessee. Shortly after 2:30 p.m., Officer Romines ordered the inmates in the day room to return to their rooms to conduct a head count. Amy Guy, a recently arrested detainee, entered shortly thereafter and the roughly 30-second encounter that followed between her and Officer Romines was captured without audio by two surveillance cameras recording from opposing directions.

The recordings begin at 2:42 p.m., with Officer Romines addressing the inmates in the day room before going to sit behind the desk at the officer's station. Just before 2:43 p.m., the inmates started to clear out of the area. Thirty seconds later, Guy entered, walked across the room, and stood in front of the officer's station where the defendant was seated. Guy told Romines that she wanted or needed to see a nurse, although there is no dispute that Guy did not appear to be having a medical emergency. Romines did not respond to that request, and instead ordered Guy to go to her room.

The videos show Romines gesturing and speaking to Guy before coming around the desk to where she was still standing. When Guy did not leave voluntarily, Romines placed an open left hand on Guy's right shoulder turning her and directing her forward as a second corrections officer appeared behind them. It also appears that Romines already had the spray in her hand when she began the open-handed escort.

During the next five seconds, Guy walked slowly, hesitated briefly before being guided forward again, and was sprayed in the face with a chemical agent when she stopped and began to turn toward Romines. One of the videos clearly shows that Guy's hands were down at her waist

as she turned partway toward Romines. Guy can be seen reacting to being sprayed by reaching toward the spray with one hand and covering her face with the other hand. Guy quickly turned away with both hands on her face, stepped away from the officers, and was then secured against a nearby table. That was when Officer Romines discovered she was bleeding from two scratches across her right forearm—pictures of which are in the record. Guy was taken by other officers to be seen by medical personnel.[1]

Later that same day, Officer Romines brought disciplinary charges against Guy and initiated a criminal prosecution charging Guy with misdemeanor assault on an officer by "intentionally, knowingly, or recklessly caus[ing] bodily injury" in violation of Tenn. Code Ann. § 39-13-101. The affidavit Romines provided in support of the criminal warrant stated that Guy was ordered to her room "because of her actions earlier in the day for being disruptive." After describing Guy's refusal to leave and the open-handed escort, the affidavit also asserted that Guy "slowly turned, and began waiving her hand trying to hit [Romines]" before she was sprayed and then "became combative [by] grabbing [Romines's] arm and hand." Romines added that her arm was "scratched and cut by [Guy] during the altercation." Guy's public defender accused Romines of lying in the affidavit, and the charge was dismissed at the State's request on September 23, 2013. Guy alleged that this assault charge resulted in further detention due to an increase in her bond and the loss of credit for time served.[2]

The amended complaint asserted § 1983 claims for the use of excessive force in violation of the Fifth, Eighth, and Fourteenth Amendments and for unlawful arrest and malicious

---

[1]It is actually not clear from the videos whether the scratches were inflicted by Guy or when the second officer reached toward Romines's arm from behind.

[2]Romines provided a similar but not identical description of the incident in the disciplinary incident report. Plaintiff apparently admitted two of the many disciplinary violations, but claims that her admissions related only to her refusal to take a shower earlier on the day of the incident.

prosecution in violation of the Fourth Amendment. Although not brought as a separate count, the district court accepted the factual allegations as also asserting a claim for deliberate indifference to serious medical need in violation of the Fourteenth Amendment. After discovery was conducted, the district court denied motions for summary judgment filed both by Officer Romines and the Metropolitan Government of Nashville and Davidson County, Tennessee. Officer Romines filed this interlocutory appeal.

## II.

Qualified immunity shields public officials from civil liability under 42 U.S.C. § 1983 unless their actions violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The ultimate burden to prove that a defendant is not entitled to qualified immunity lies with the plaintiff. *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010). To survive a motion for summary judgment, plaintiff must come forward with evidence from which a jury could find "(1) that the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Pearson v. Callahan*, 555 U.S. 223, 236, 242 (2009).

However, this court may not exercise interlocutory jurisdiction over an appeal from the denial of summary judgment "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 320 (1995). As a practical matter, this means "we may not decide a challenge directly to the district court's determination of the record-supported evidence or the inferences it has drawn therefrom." *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 610 (6th Cir. 2015). A defendant may avoid this jurisdictional impediment by conceding the facts in the light most favorable to the plaintiff and seeking review with respect to purely legal issues—including whether the defendant's actions

violate a clearly established constitutional right or whether the district court's determination is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Id*. at 609 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### A.    Excessive Force

An excessive-force claim may arise under the Fourth, Eighth, or Fourteenth Amendments depending on "whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area in between the two." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). Here, there is no real dispute that plaintiff's claim is governed by the Fourteenth Amendment. The district court recognized as much, plaintiff abandoned reliance on all but the Fourteenth Amendment, and defendant urges us to take judicial notice of the fact that plaintiff was being detained pursuant to an arrest warrant when the use of force occurred.[3]

### 1.    Constitutional Violation

To establish an excessive-force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against [her] was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). This objective standard is not to be applied "mechanically," and "turns on the 'facts and circumstances of each particular case.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness determination must be made from the perspective of a reasonable officer on the scene based on what the officer knew at the time, and "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment'

---

[3]This court has previously identified "the dividing line between the Fourth and Fourteenth Amendment zones of protection at the probable-cause hearing" for pretrial detainees arrested *without* a warrant. *See Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010). Since it appears to be undisputed that plaintiff was being detained pursuant to a judicially approved warrant issued the day before the use-of-force incident, her excessive-force claim is not one that could arguably have arisen under the Fourth Amendment. *Id*. at 867 n.8.

of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. (alterations in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).[4]

Romines argued in the district court that no constitutional violation could be established because "a reasonable officer would have been justified in using the minimal force of a short burst of chemical agent to avoid a possible assault by an agitated detainee." Defendant insisted that a reasonable officer would have perceived plaintiff's actions as threatening, but has conceded the facts in the light most favorable to plaintiff for purposes of this appeal. Although defendant's affidavit stated that plaintiff tried to hit her before being sprayed, defendant concedes that she did not. In fact, the video evidence shows that plaintiff's hands were down in front of her when she stopped to turn. There was also evidence that Romines received a disciplinary letter about a presentation she made to at-risk students during which she said she would use a chemical spray on any inmate who did not do what she said. Viewed in the light most favorable to plaintiff, the record-supported evidence does not blatantly contradict plaintiff's claim that her inquires about seeing a nurse were ignored and she was sprayed without provocation after offering minimal passive resistance to the open-handed escort. Romines does not challenge the district court's legal determination that a reasonable jury could conclude from these facts that her use of the chemical spray was objectively unreasonable under the circumstances she faced.

### 2.       Clearly Established Right

Taking a different tack on appeal, Romines argues that this right was not clearly established at the time of the alleged violation. Although this argument was not made in the

---

[4]*Kingsley* identified a non-exclusive list of considerations that may be relevant to the objective reasonableness inquiry:  namely, (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473.

district court, we exercise our discretion to consider the issue because it is a legal question within our jurisdiction and resolution of the defendant's asserted qualified-immunity defense would further the progress of the litigation. *See In re Morris*, 260 F.3d 654, 663-64 (6th Cir. 2001).

The essence of this argument is that the use of force in this case occurred prior to the Supreme Court's adoption of the objective reasonableness standard in *Kingsley*. It is true that there was disagreement among the circuits prior to *Kingsley* about whether a claim of excessive force "brought by a pretrial detainee must satisfy the subjective standard or only the objective standard." *Kingsley*, 135 S. Ct. at 2472. But, a defendant is not entitled to qualified immunity "simply because the courts have not 'agreed upon the precise formulation of the [applicable] standard." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) (alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 202-03 (2001)).

Rather, the question under the second prong of the qualified-immunity analysis "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Although there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The right must not be defined at a "high level of generality," and the "dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis in original) (quoting *al-Kidd*, 131 S. Ct. at 742); *see also Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 508-09 (6th Cir. 2012) (explaining that inquiry must be reasonably particularized).

At the time of the use-of-force incident in September 2013, this court applied analogous standards to excessive-force claims brought under the Eighth and Fourteenth Amendments. *See Shreve v. Franklin Cty.*, 743 F.3d 126, 134 (6th Cir. 2014). That is, under either amendment the

question was whether the use of force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *See Burgess*, 735 F.3d at 473; *Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010). The force need not have been absolutely necessary, but we asked in *Griffin* "whether the use of force could plausibly have been thought necessary." 604 F.3d at 954 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

In *Griffin*, this court held that the prison officials' use of a leg-sweep maneuver to gain control over a pretrial detainee who created a disturbance, resisted being moved, and struggled as two officers tried to guide her away from a nurse's station did not violate this standard. *Id*. at 954-55. In *Williams*, prison officials used a chemical agent and assault team on an inmate who was ordered to "pack up" his cell and responded by asking, "What for, sir?" *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011). We concluded in *Williams* that the facts, if true, could permit a finding that the use of force was unnecessary, was not applied in a good-faith effort to maintain or restore discipline, and was possibly motivated by malicious purpose. *Id*.; *see also Roberson v. Torres*, 770 F.3d 398, 407 (6th Cir. 2014) (relying on *Williams* to conclude that use of a chemical agent on a sleeping prisoner violated clearly established law).

Viewing the evidence in the light most favorable to plaintiff, we conclude that a reasonable officer would have been on notice in September 2013 that use of a chemical agent on a non-threatening pretrial detainee who did not comply with the officer's verbal orders and then passively resisted an open-handed escort by hesitating and stopping to turn to ask again about seeing a nurse would amount to constitutionally excessive force. The denial of qualified immunity with respect to this claim was not error.

### B.      Unlawful Arrest and Malicious Prosecution for Assault on an Officer

Unlawful arrest and malicious prosecution are distinct claims under the Fourth Amendment, but, in this case, both claims turn on whether there was probable cause to support the arrest warrant and initiate the criminal proceeding. *Sykes v. Anderson*, 625 F.3d 294, 305, 308 (6th Cir. 2010). Romines contends that Guy cannot establish either claim because there was probable cause to believe she had assaulted an officer by "intentionally, knowingly, or recklessly caus[ing] bodily injury" in violation of Tenn. Code Ann. § 39-13-101.

A facially valid arrest warrant issued by a magistrate judge provides a complete defense to a claim of unlawful arrest in violation of the Fourth Amendment unless the defendant made false statements or omissions knowingly, deliberately, or with reckless disregard for the truth that were "material, or necessary, to the finding of probable cause." *Sykes*, 625 F.3d at 305 (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)). Guy argued that the affidavit provided in support of the warrant had falsely stated that she "began waiving her hand trying to hit [Romines]" before being sprayed and that she "became combative grabbing [Romines's] arm and hand" after being sprayed. Romines argued that these allegedly false statements were not material to the probable cause determination because Guy was charged with causing bodily injury—not causing fear of imminent bodily injury. But, without the allegedly false statements, the district court found there was a question of fact whether the affidavit provided probable cause to believe plaintiff had caused the scratches intentionally, knowingly, or recklessly.

Guy's separate claim for malicious prosecution requires proof that Officer Romines initiated the prosecution without probable cause. *Sykes*, 625 F.3d at 308. Romines argues that there was probable cause because she felt Guy make contact with her arm. Plaintiff claimed that any contact she made with defendant's arm was incidental to her reaction to being sprayed in the

face with the chemical agent. The video evidence does not blatantly contradict that claim since it showed that Romines used her right hand to spray Guy in the face and Guy raised her arms to reach toward the spray with one hand while covering her eyes with the other hand. Even if a reasonable officer could have believed that Guy caused the scratches, when viewed in the light most favorable to plaintiff, there is a disputed question of fact whether a reasonable officer in defendant's position could have believed that Guy did so intentionally, knowingly, or recklessly.

The district court did not err in denying qualified immunity with respect to the claims of unlawful arrest and malicious prosecution.[5]

### C.       Deliberate Indifference to Serious Medical Need

A pretrial detainee's claim for deliberate indifference to a serious medical need arises under the Fourteenth Amendment, but it is "analyzed under the same rubric as Eighth Amendment claims brought by prisoners." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). Proving deliberate indifference requires that a plaintiff demonstrate both: (1) the existence of a sufficiently serious medical need (the objective component); and (2) that the defendant "perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" (the subjective component). *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The claim against Officer Romines is that she ignored Guy's request to see a nurse and instead ordered her to return to her room just before the use-of-force incident.

Although Guy is vague about the serious medical need at issue, it appears that it related to the fact that she was being monitored by the nursing staff for possible symptoms of withdrawal from Xanax, Percocet, and/or Oxycontin. In particular, there are records indicating

---

[5]Defendant argued in the district court that plaintiff could not establish malicious prosecution because dismissal at the request of the state did not resolve the criminal charge in plaintiff's favor. Defendant has abandoned this argument on appeal.

that Guy was assessed by a nurse at 3:50 p.m. on September 10 and at 2:00 a.m. on September 11, but was not assessed or given medication when she was seen by a nurse at 10:30 a.m. on September 11 because she refused to cooperate with the medical staff. It was four hours later that Guy claims Officer Romines was deliberately indifferent to her serious medical needs. Guy testified that when she approached the officer's station she was feeling "weak and shaky" and was worried that she could get worse. But, Guy also stipulated that she did not appear to be having a medical emergency when Romines ignored her request and ordered her to return to her room.

"A medical need is objectively serious where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Harris*, 583 F.3d at 368 (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)). The district court found a disputed question of fact on this issue based on evidence that Romines may have been aware that Guy had refused medication that morning. Specifically, the district court relied on a "Refusal of Treatment" form dated September 11 and apparently signed by a nurse and Officer Romines, which indicated that Guy refused medication and was warned that the possible consequences could include worsening medical conditions, permanent disability, or death. Accepting this evidence in the light most favorable to plaintiff, however, it is not sufficient to lead a reasonable jury to infer that it would have been obvious even to a layperson that Guy was in need of immediate medical attention when she approached Officer Romines and asked to see a nurse.[6]

Moreover, Guy received medical attention following the use of force and was next assessed for symptoms of withdrawal at 5:00 p.m. that same day. When a claim is essentially

---

[6]The form also purported to include a release of liability, although it was not signed by Guy.

based on a delay in treatment, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Blackmore*, 390 F.3d at 898 (quoting *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001)). Here, the records show that Guy was assessed by nursing staff four times on September 12, twice on September 13, and twice more on September 14. But, at no time either before or after the alleged deliberate indifference by Officer Romines did the assessments show that Guy experienced more than mild or moderate symptoms of withdrawal. Guy was worried that stopping her anxiety medication could cause seizures, but she has not presented verifying medical evidence to establish that a detrimental effect resulted from the delay between her request to see a nurse and when she was next assessed for symptoms of withdrawal. Because a reasonable juror could not find deliberate indifference to a serious medical need, Officer Romines is entitled to qualified immunity with respect to this claim.

### III.

For the reasons stated, we **AFFIRM** the denial of qualified immunity with respect to the claims of excessive force, unlawful arrest, and malicious prosecution; **REVERSE** the denial of qualified immunity with respect to the claim for deliberate indifference to serious medical need; and **REMAND** for further proceedings consistent with this opinion.

**CLAY, Circuit Judge, dissenting.** Rather than decide the issues of qualified immunity presented by this appeal, I would simply dismiss this appeal for lack of jurisdiction.

Officer Janie Romines, who is being sued for spraying pre-trial detainee Amy Guy with a chemical agent, appeals the denial of her motion for summary judgment based on qualified immunity. It is well-established that "[a] defendant challenging a denial of summary judgment on qualified immunity grounds must be 'willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal.'" *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)). We have this requirement because "[a] district court's denial of qualified immunity is an appealable final decision under 28 U.S.C. § 1291, but only 'to the extent that it turns on an issue of law.'" *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). Moreover, "[m]ere conclusory statements that the officers construe the facts in the light most favorable to the plaintiff cannot confer jurisdiction upon this Court." *Thompson*, 656 F.3d at 368. Because Romines continually disputes material facts instead of conceding Plaintiff's version of the facts as required, I would dismiss this appeal for lack of jurisdiction. I therefore respectfully dissent.

Taking the evidence in the light most favorable to Plaintiff, the relevant facts are as follows. On September 11, 2013, Guy was a pre-trial detainee at the Davidson County Correctional Development Center, where Romines was stationed as a correctional officer. At around 2:42 p.m., Romines told the detainees, including Guy, to leave the day room and return to their cells. Rather than return to her cell, Guy approached Romines to ask whether she could see a nurse, as she was not feeling well. Romines told Guy to return to her cell. When Guy did not move immediately, Romines approached Guy and began to escort her in the

direction of her cell. About five seconds later, Guy turned her head toward Romines and again asked whether she could see a nurse, but Romines refused to answer. Guy subsequently paused, turned toward Romines with her hands clasped in front of her, and once again asked to see a nurse. In response, Romines sprayed Guy with Freeze +P, a chemical agent. Reacting to being sprayed, Guy reached out toward Romines with her right hand in an attempt to push away the can of Freeze +P. Guy was led to a nearby table and restrained.

After the incident, Romines noticed that she had scratches on her arm. She then obtained a warrant for Guy's arrest, charging her with misdemeanor assault. In her affidavit supporting the warrant, Romines alleged that Guy was combative and had been trying to hit her. However, Romines subsequently admitted that these allegations were baseless. The charges against Guy were later dropped.

As a result of this incident, Guy filed this suit against Romines and the Metropolitan Government of Nashville and Davidson County pursuant to 42 U.S.C. § 1983. Guy asserted three claims against Romines that are relevant to this appeal: false arrest and malicious prosecution, use of excessive force, and deliberate indifference to a serious medical need. Romines filed a motion for summary judgment in the district court, arguing that she was entitled to qualified immunity on the excessive force claim. The district court denied the motion after determining that the parties disputed genuine issues of material fact on each claim.

In filing this interlocutory appeal, Romines claims that she concedes the facts in the light most favorable to Guy. However, her arguments belie this characterization. Throughout her appellate brief, Romines argues that she perceived Guy's actions as threatening, a fact which she uses to distinguish this case from *Williams v. Curtin*, 631 F.3d 380 (6th Cir. 2011), in which we held that a plaintiff could state an excessive force claim against correctional officers who used

chemical spray on him when he asked a question in response to being ordered to "pack up" his cell. *Id.* at 384. In attempting to distinguish *Williams* from this case, Romines asks us to accept her contention that Guy's movements could be seen as threatening, despite evidence to the contrary revealing that Guy had her hands clasped in front of her when she turned toward Romines to simply ask for medical attention. "When the legal arguments advanced rely entirely on a defendant's own disputed version of the facts, the appeal boils down to issues of fact and credibility determinations that we cannot make." *Thompson*, 656 F.3d at 367 (citing *Berryman*, 150 F.3d at 564.) Because Romines' arguments rely on her view of the facts and not on the facts as viewed in the light most favorable to Guy, I would dismiss this appeal for lack of jurisdiction.

Romines similarly contests facts in the context of Guy's claim that Romines subjected her to false arrest and malicious prosecution. In arguing that she is entitled to qualified immunity, Romines contends that she had probable cause to arrest Guy because Guy became combative and scratched Romines' arm. Guy's actions, according to Romines, constituted an assault resulting in an intentional, knowing, or reckless bodily injury. *See* Tenn. Code. Ann. § 39-13-101. However, Guy contends that she was merely reacting to the Freeze +P spray in her eyes and that any scratches she may have caused were not made with the requisite *mens rea*. This dispute reveals that Romines is not actually conceding the facts in the light most favorable to Guy, despite her conclusory claim to the contrary. Therefore, I would find that we lack jurisdiction over Romines' interlocutory appeal based on the denial of qualified immunity.

Because Romines repeatedly contests material facts, even though this Court can only decide purely legal issues during a qualified immunity interlocutory appeal, I would dismiss this appeal for lack of jurisdiction and remand the case to the district court to proceed to trial.