NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0414n.06

Case No. 24-1362

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Sep 03, 2025

KELLY L. STEPHENS, Clerk

|   |   |   |
|---|---|---|
| DAVID MCNAIR, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| COLLIN PRATT, | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: BOGGS, GIBBONS, and NALBANDIAN, Circuit Judges.

BOGGS, J., delivered the opinion of the court in which NALBANDIAN, J., concurred. GIBBONS, J. (pp. 17–22), delivered a separate dissenting opinion.

**BOGGS, Circuit Judge**. In 2019, Michigan prisoner David McNair was involved in an altercation with Corrections Officer Collin Pratt. The altercation ended with Pratt slamming McNair to the ground, injuring him. McNair subsequently sued Pratt for violating his civil rights. When Pratt moved for summary judgment on qualified-immunity grounds, the district court denied his motion. Pratt now appeals that decision. Unlike the district court, we conclude McNair's counsel failed to show that Pratt violated a clearly established right. Accordingly, Pratt is entitled to qualified immunity, and we reverse.

## I. Background

Plaintiff David McNair ("McNair") is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). McNair was convicted of a double murder in 2018 and is

serving his current sentence until 2060. On the date of the alleged excessive-force incident, McNair was incarcerated at the Michigan Reformatory in Ionia, Michigan. Defendant Corrections Officer Collin Pratt ("Pratt") worked as a yard officer at the Michigan Reformatory at the same time. Before the date of the incident, McNair and Pratt had never interacted.

On the afternoon of June 11, 2019, McNair was moving about the yard, while Pratt stood nearby with other officers, monitoring the flow of traffic. At around 2:30 p.m., McNair was called to leave the yard and go to the prison's school, along with the other level IV prisoners.[1] On his way off the yard, McNair began to call back and forth through a fence with another prisoner on the yard, a violation of MDOC rules. Pratt's coworker, Corrections Officer Jose Herrera, commanded the other prisoner back to his housing unit as punishment. McNair continued yelling to the other prisoner.

Officer Herrera called McNair over and requested McNair's identification card. McNair and Officer Herrera began to bicker, while Pratt watched. Eventually, Pratt intervened, and ordered McNair back to his housing unit as punishment. McNair protested, because he feared that missing school might itself result in further punishment. Pratt continued to order McNair back to his unit, but McNair continued to refuse, wanting assurances that Pratt would explain to McNair's teacher why he was missing class.

Under the prison's rules, a prisoner's failure to return to his cell when ordered constituted a "Class 1" form of misconduct, which warrants placement in segregated custody. Accordingly, when McNair did not follow Pratt's initial order, Pratt then ordered him to submit to handcuffing.

---

[1] Level IV is McNair's "security classification" within the MDOC. This six-level classification determines the amount "of restrictiveness enforced in housing units at each correctional facility." MICH. COMP. LAWS § 800.42(7)(c). Level IV is the third-most restrictive classification.

2

McNair complied without resistance. While Officer Herrera took the other shouting prisoner to another part of the prison, Pratt began escorting McNair to the prison's segregation area.

As the two left the yard, Pratt maintained control of the handcuffed McNair with a firm hold on McNair's arm. McNair told Pratt that his grip was unnecessarily tight and causing McNair pain. Pratt refused to adjust the pressure of his grip. While drawing closer to the segregation area, McNair and Pratt began to exchange heated words. According to Pratt, McNair then threatened to beat Pratt and attempted to pull his restrained arm away from Pratt's grip. Having now reached the segregation area's door, Pratt reacted by pushing McNair up against the barred wall next to the door, keeping his arm pressed against McNair's back. Pratt claims that at this point, McNair pushed back in Pratt's direction, twisting his head away from the metal bars. Because the segregation door was locked, it was impossible for Pratt to unlock the door while simultaneously restraining McNair. While continuing to hold McNair against the wall, Pratt began to call out to other officers for assistance. Pratt kept McNair against the wall for around thirteen seconds, a tactic called a "cool down" which he hoped would deescalate the situation.

Pratt also continued to communicate that McNair should stop resisting, although the parties now dispute how Pratt voiced this message. Pratt alleges that he told McNair "Come on, man, let's not do this. Can I get some help. Stop resisting. Don't push. Don't do this. You just have to go into seg. It's just a timeout." R. 47-2, PageID 300. McNair, however, alleges that at some point while pressing him against the bars, Pratt instead told him either "[S]ay something else or I'm going to make you kiss concrete" or "[S]hut the fuck up before I make you kiss concrete." R. 47-1, PageID 275, 279. In either case, Pratt further alleges that despite his warning, McNair continued to push his back up against Pratt's arm, then turned his head toward Pratt, and "made a

3

hacking sound as if to spit." R. 47-2, PageID 300. In his brief, McNair's counsel does not refute this allegation (let alone refute it with citations to the record). Appellee's Br. at 5–6.

Pratt finally responded to McNair's resistance by forcefully taking him to the floor. First, Pratt tried to use what he claims was an MDOC-approved takedown, akin to a hip toss, to secure the handcuffed McNair. But McNair braced himself to resist the movement, leading Pratt to instead pick up McNair by the waist and slam him to the prison's floor, face-first. Once McNair was immobilized on the floor, other officers immediately arrived, responding to either Pratt's earlier calls for help, or the noise of the parties' struggle. After helping Pratt secure McNair on the floor, the officers placed McNair in leg irons. Two of them then accompanied McNair to the prison's healthcare unit.

During the medical visit, McNair was bleeding from a gash in his forehead, which coincided with a medium-sized lump. Medical personnel also noted multiple other abrasions on McNair's face. Staff wiped the blood from McNair's face and gave him band-aids for the injury. After about fifteen minutes in the healthcare unit, McNair was taken to segregation for five days. He would return to the healthcare unit two or three days later, and receive over-the-counter painkiller pills for pain in his legs resulting from the incident.

Pratt was placed on administrative leave, pending investigation. The investigation found sufficient evidence for five findings that Pratt was guilty of violating the MDOC's "use of force" policy. R. 47-2, PageID 292–93. Around two months later, on August 20, 2019, Pratt was terminated by the MDOC. After filing a grievance with his union, Pratt was offered his job back. He resumed work at the MDOC in November 2020.

On January 27, 2020, Pratt filed suit in the District Court for the Western District of Michigan against Pratt and three other corrections officers. The complaint alleged a single

4

violation of McNair's civil rights under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution. At present, Pratt is the sole remaining defendant in this case. In July 2023, Pratt moved for summary judgment under Federal Rule of Civil Procedure 56, on qualified-immunity grounds. The magistrate judge issued a report and recommendation, recommending that the district court should deny Pratt's motion because genuine issues of material fact precluded summary judgment. The district court approved and adopted the magistrate judge's recommendation as the opinion of the court. This interlocutory appeal from Pratt then followed.

## II.     Jurisdiction

Because Pratt timely appealed the district court's decision, we have jurisdiction under 28 U.S.C. § 1291. Although the proceedings at the district court did not reach a final judgment, we may still hear Pratt's appeal under the collateral-order doctrine, which applies when the district court denies an official's qualified-immunity defense on legal (rather than factual) grounds. *Williams v. Maurer*, 9 F.4th 416, 426–27 (6th Cir. 2021); *cf. Johnson v. Jones*, 515 U.S. 304, 315–18 (1995) (holding that the collateral order doctrine does *not* allow for interlocutory appeal where officials moved for summary judgment while continuing to dispute the plaintiff's facts on appeal). In denying qualified immunity, the district court resolved the legal question of whether Pratt's conduct violated clearly established law, giving us the opportunity to review immediately its resolution of that issue. *See Williams*, 9 F.4th at 427 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985)).

## III.     Analysis

On appeal, we review the district court's denial of summary judgment de novo. *Rhodes v. Michigan*, 10 F.4th 665, 672 (6th Cir. 2021). Summary judgment is proper where "the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On review, we "consider all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *Taylor v. City of Saginaw*, 11 F.4th 483, 486–87 (6th Cir. 2021) (citation modified). Initially, the party moving for summary judgment bears the burden of explaining the basis for its motion and identifying the portions of the record which "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But the burden then shifts to the nonmoving party, who must cite specific evidence in the record indicating that there remains a genuine factual issue left for trial. *Id.* at 324; *see* FED. R. CIV. P. 56(e). The nonmoving party must offer more than a "scintilla" of evidence; in other words, it must show that, based on specific material within the record at summary judgment, a jury could still reasonably find in its favor. *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1056 (6th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### A. The Record at Summary Judgment

In moving for summary judgment, Pratt satisfied his initial burden by setting out a significant recitation of the facts, supported by numerous citations to evidence in the record. *See* Appellant's Br. at 6–14. The burden then shifted to McNair (the nonmovant) to offer his own contrary rendition of the facts. *See Johnson v. Ford Motor Co.*, 13 F.4th 493, 502–03 (6th Cir. 2021) (citing *Celotex*, 477 U.S. at 324). Somewhat surprisingly, both at the district court and then in his appellate briefing, McNair's counsel disputed very few of Pratt's facts, let alone with supporting citations to the record. *See* Appellee's Br. at 5–6; *McNair v. Pratt*, No. 1:20-cv-63, 2024 WL 1382840 (W.D. Mich. Feb. 2, 2024), *adopting report and recommendation*, 2024 WL

1367350 (W.D. Mich. Mar. 31, 2024). In reviewing summary judgment appeals, "we look at the record in the same fashion as the district court." *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007) (citation modified). Our present review of McNair's case on appeal is therefore constrained to the specific disputes of fact considered by the district court.

As an initial matter, McNair's brief cites a USB drive, which his counsel apparently failed to properly submit at the district court. The USB drive contains six video recordings of the altercation between McNair and Pratt, shot from different angles by security cameras in the Michigan Reformatory. McNair's counsel cites to one of the videos in his brief to this court, just as he did at the district court. Appellee's Br. at 9–10; *McNair*, 2024 WL 1382840, at *7 n.4.

Notably, although McNair defeated Pratt's motion for summary judgment at the district court, the magistrate judge there explicitly declined to consider the USB drive. The magistrate judge's report and recommendation to the district court explained that "[the] thumb drive is not [properly] before the Court. Plaintiff's counsel did not file this thumb drive as an exhibit, did not provide a copy of the thumb drive to the Clerk's Office, and did not file a proof of service for the exhibit." *McNair*, 2024 WL 1382840, at *7 n.4. The district court then adopted the magistrate judge's report and recommendation. *See McNair*, 2024 WL 1367350. Notwithstanding the district court's ruling, McNair's counsel continues to direct our attention to the USB drive. Appellee's Br. at 9–10.

Generally, when courts consider a motion for summary judgment, video footage showing the disputed events is highly useful, and can singlehandedly decide the motion. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010); *Dunn v. Matatall*, 549 F.3d 348, 353–54 (6th Cir. 2008). But while video evidence may often be dispositive at summary judgment, we cannot consider it in this case because McNair's USB drive falls outside

7

the scope of our review. At the district court, motions for summary judgment ultimately hinge on whatever facts the parties cite from "the record." FED. R. CIV. P. 56(c)(1)(A). And when our court reviews the district court's decision, the "record on appeal" consists of: "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk." FED. R. APP. P. 10(a).

Unfortunately, McNair's counsel did not properly submit his USB drive as an exhibit at the district court. In reviewing Pratt's summary-judgment motion on appeal, we cannot now consider new evidence that was "not before the district court." *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1303 (6th Cir. 1992). So the footage on the USB drive—which was never an "exhibit" at the district court—cannot form the basis for our decision. FED. R. APP. P. 10(a); *see Clark v. Warden*, 934 F.3d 483, 490 (6th Cir. 2019).

Setting aside any citations to the improperly submitted video evidence, McNair's briefs at the district court and on appeal contain just two other citations to the record that could create a genuine issue of material fact. *See McNair*, 2024 WL 1382840, at *6–7. First, McNair's brief (quoted verbatim below) describes the events directly preceding Pratt slamming McNair to the ground, by citing McNair's deposition testimony:

> A: " …..He said the camera ain't going to show me squeezing your arm. I said I don't care what the camera shows. I don't want you – I don't want you to squeeze my arm. He smacked me head through the – through the cell bars and then he says shut the fuck up before I make you kiss concrete. And then I told him fuck him, and then he did what he promised.
>
> Q: Meaning what?
>
> A: He was going to make me kiss concrete. He slammed me on my face, and he split my head open….."
>
> (RE #47-1, PageID 275, Transcript Page 10 Lines 2–16).

Appellee's Br. at 6.

And second, McNair alleged that Pratt violated his own department's use-of-force policies, based on Pratt's deposition testimony that "[The MDOC] found sufficient evidence of five findings for use of force and a couple other conducts unbecoming and found me guilty of it." Appellee's Br. at 7 (quoting R.47-2, PageID 292).

### B. Qualified-Immunity Analysis

Our task is therefore to determine whether McNair's two citations to the record create a sufficient dispute of material fact to defeat Pratt's motion for summary judgment. McNair proceeds under 42 U.S.C. § 1983, meaning he must show both: (1) a deprivation of rights secured by the Constitution and laws of the United States; and (2) that Defendant Pratt deprived him of his federal rights under color of state law. *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000); 42 U.S.C. § 1983. Neither party disputes that during the incident, Pratt (an on-the-job employee of the Michigan Department of Corrections) was acting under color of state law.

To satisfy the other element of his § 1983 claim, McNair alleges that Pratt's conduct violated his Eighth Amendment right to be free from "cruel and unusual punishments." U.S. Const. amend. VIII. A prison guard's use of force can violate the Eighth Amendment if it constitutes "unnecessary and wanton infliction of pain" on prisoners. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citation modified).

In defense, Pratt raises the doctrine of qualified immunity, which shields officials from civil liability so long as they do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation modified). This immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects all but the plainly

9

incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation modified). Because Pratt raised this defense, McNair now bears the burden of demonstrating that Pratt is not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

In response to a motion for summary judgment, this means McNair must do two things. He must show that, "taken in the light most favorable to the party asserting the injury," the facts alleged at this stage demonstrate a violation of a constitutional right. *Scott*, 550 U.S. at 377 (citation modified). Here, that means showing that his Eighth Amendment rights were violated. *See Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). This involves proving both a subjective component—whether Pratt intended to use force "maliciously and sadistically to cause harm"—as well as showing that, objectively, Pratt inflicted "sufficiently serious" pain. *Ibid.* (citation modified).

Additionally, McNair must show that even if he suffered an Eighth Amendment violation, the contours of his constitutional right were "sufficiently clear that every reasonable official would have understood that what he [wa]s doing violate[d] that right." *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The panel can address these issues in either order. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). And if McNair fails to carry his burden on either issue, his claim fails. *Ibid.*

In this case, we can begin and end our analysis with the second step of the qualified-immunity analysis, because we hold that Pratt's conduct did not violate McNair's clearly established rights. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Our court has framed the critical inquiry as whether "a reasonable officer confronted with the same situation

would have known his conduct violated [the plaintiff's] right." *Jones v. Clark County*, 959 F.3d 748, 766 (6th Cir. 2020) (citation modified).

Because McNair bears the burden of proof, he must direct us towards precedential Supreme Court or Sixth Circuit caselaw that clearly establishes the right. *See Coley v. Lucas County*, 799 F.3d 530, 540 (6th Cir. 2015). And typically, McNair must produce a case that does more than define his rights "at a high level of generality." *al-Kidd*, 563 U.S. at 742. Instead, the case must be specific enough that it would put *every* reasonable officer in "the *particular* situation that [Pratt] . . . confronted" on notice that the officer's conduct was unlawful. *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020). The need for a plaintiff to produce caselaw defining the contours of his rights is "especially important" in the fact-sensitive context of excessive-force cases. *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022) (citation modified). Merely citing a "generic right (for example, the Fourth Amendment right against excessive force) often will not give officers proper notice about what they must do in a specific situation (for example, a domestic disturbance involving a knife)," and is therefore insufficient to defeat qualified immunity. *Erickson v. Gogebic County*, 133 F.4th 703, 710 (6th Cir. 2025) (citation modified).

The district court found that McNair satisfied his burden by citing *Whitley v. Albers*, 475 U.S. 312 (1986), a case that McNair also cites on appeal. *See* Appellee's Br. at 4, 9. But this was error. To be sure, *Whitley* is a foundational case in the Supreme Court's Eighth Amendment jurisprudence: it established general principles that endure today, including the idea that excessive force in the prison context must involve subjective "obduracy and wantonness" by an official. *Id.* at 319. However, the Supreme Court has "repeatedly" cautioned that such general principles are insufficient to establish law clearly for qualified-immunity purposes, and that some particularized factual similarity is necessary. *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (citation modified).

11

And the specific facts of *Whitley* would hardly help an officer in Pratt's position to determine if his conduct was unlawful: *Whitley* concerned a prison riot, a hostage situation, and officers shooting a prisoner with shotguns—not a handcuffed and resistant prisoner being slammed to the ground by an officer. *See* 475 U.S. at 314–16. Based on *Whitley* alone, it is impossible to say that every reasonable officer in Pratt's position would know how to lawfully respond to McNair's resistant behavior.

Because McNair fails to show a case that established the particularized contours of his Eighth Amendment right prior to the time of the incident, Pratt suggests the panel can end its inquiry there. Appellant's Br. at 45–46. But even where a plaintiff fails to direct the court to relevant caselaw, the Supreme Court has suggested that circuit courts do their own review of precedent to determine if a right was clearly established at the time of the alleged violation. *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (citing *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984)).

But our own survey of existing law similarly fails to reveal any case that would help McNair carry his burden of showing that "every reasonable official" would have known Pratt was acting unconstitutionally at the time of the incident. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citation modified). The most favorable case for McNair is *Cordell v. McKinney*, 759 F.3d 573. There, we denied an officer qualified immunity, based on video footage that showed him slamming a restrained, largely compliant inmate's head into a jail wall. *Id.* at 577, 588.

However, we subsequently narrowed *Cordell*'s holding in *Burnett v. Griffith*, 33 F.4th 907 (6th Cir. 2022). In *Burnett*, our court reviewed the case of a handcuffed prisoner who attempted to break away from two officers escorting him through a county jail. *Id.* at 909. One of those officers then slammed the prisoner facedown into the ground. *Id.* at 909–10. In the ensuing lawsuit, the prisoner argued that *Cordell* defeated the officer's qualified-immunity defense,

because it was a sufficiently similar, published, and precedential case clearly establishing that the officer acted unlawfully. *Id.* at 912. But despite the factual similarities to *Cordell*, our court in *Burnett* nonetheless granted qualified immunity. *Ibid.* In doing so, we reasoned that *Cordell* involved a compliant prisoner who was pushed into a wall after merely turning towards an officer who was escorting him; *Burnett*, meanwhile, involved a noncompliant handcuffed prisoner who was thrown to the ground after attempting to pull away from his escorts entirely. *Ibid.* We concluded that *Cordell* only clearly established the proposition that "the Eighth Amendment includes the right to be free from a jail official's use of excessive force against a *compliant* prisoner who is handcuffed and in an area of the jail where only other jail officials are present." *Ibid.* (emphasis added). And because the officer in *Burnett* was not on notice that his conduct was clearly unconstitutional, we granted him qualified immunity. *Id.* at 915.

Another recent case from our circuit further emphasizes that *Cordell* only applies where officials use substantial force against a compliant prisoner. In *Erickson v. Gogebic County*, 133 F.4th 703, we again denied qualified immunity to a prison officer who threw a compliant inmate to the ground, holding that the officer's conduct violated *Cordell*. *Id.* at 711. But in doing so, we framed the dispositive question as whether "a reasonable jury could find that [the inmate] (like the inmate in *Cordell*) was under control." *Ibid.* Because video footage showed the officer in *Erickson* used substantial force against a compliant, non-resistant prisoner, we ultimately held he violated a clearly established Eighth Amendment right. *Ibid.* But we also echoed *Burnett*'s holding that, where an officer instead uses a similar amount of force to regain control over a *non-compliant* inmate, our caselaw did not clearly establish whether his conduct violated the Eighth Amendment. *See ibid.*

13

Applying those precedents to the record before us, McNair's case is much closer to *Burnett* (where we granted qualified immunity) than it is to *Cordell* or *Erickson*. Crucially, at both the district court and now on appeal, McNair does not cite any record evidence showing that he was compliant or under Pratt's control when Pratt threw him to the ground. *See* Appellee's Br. at 5–6; *McNair*, 2024 WL 1382840, at *6–7. True, he disputes what Pratt said immediately before throwing him to the ground: according to McNair, Pratt threatened to make him "kiss concrete." Appellee's Br. at 6. And this statement would certainly be relevant to the first portion of the qualified-immunity analysis, *i.e.*, whether Pratt violated the Eighth Amendment by behaving sadistically and causing substantial pain. *See Cordell*, 759 F.3d at 582–84; *Hardrick*, 604 F.3d at 955.[2]

However, Pratt's purported "kiss the concrete" threat is not dispositive for the clearly-established-law portion of our qualified-immunity analysis, because it leaves unanswered the central question under *Cordell*, *Burnett*, and *Erickson*: whether McNair was under Pratt's control when Pratt forcefully threw him to the ground. And because McNair does not direct us to any contrary evidence in the record, we are left with Pratt's unrefuted allegations on this point, supported by his citations to deposition testimony. These are: that McNair made obscene and threatening remarks towards Pratt; that while being walked to segregation, McNair repeatedly try to pull away from Pratt, and again threatened to beat him; that McNair continued to try to break free while Pratt struggled to open the door to the segregation unit; that McNair insulted Pratt for a

---

[2] The same is true for McNair's allegation that Pratt violated his own department's policies on the use of force. We have cautioned that such evidence has limited usefulness in qualified-immunity cases, because "a city [or state] can certainly choose to hold its officers to a higher standard than that required by the Constitution[.]" *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992). However, evidence that a defendant officer violated his department's policies may still be relevant to the Eighth Amendment inquiry, by suggesting his subjective state of mind at the time of an incident. *Cordell*, 759 F.3d at 584 n.5.

third and final time (although the parties dispute exactly what was said); and that McNair continued to resist Pratt's efforts to secure him and tried to spit on Pratt, until Pratt finally threw him to the ground. Appellant's Br. at 11–13.

On these undisputed facts, we cannot say that McNair was under Pratt's control to the point that Pratt's action in throwing him to the ground was clearly established as unconstitutional—that is, that *every* reasonable officer would know that he was violating the Eighth Amendment. Indeed, our caselaw affords significant (though not unlimited) discretion to prison officers—like Pratt— who exercise force to restrain a resistant, hostile prisoner. In several cases, our court has found that such conduct did not violate the Eighth Amendment at all, let alone violate it in a way clearly forbidden by precedent. *See Johnson v. Sootsman*, 79 F.4th 608, 619–20 (6th Cir. 2023); *Hardrick*, 604 F.3d at 954; *Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008). But as in *Burnett*, we need not even reach the merits of McNair's Eighth Amendment claim here. Because McNair does not dispute that he was noncompliant with Pratt's attempts to secure him, "*Cordell* thus cannot fairly be extended to this case" to show that Pratt acted clearly unconstitutionally in throwing McNair to the ground. *Burnett*, 33 F.4th at 913.

Our conclusion is only further strengthened by the unrefuted evidence that Pratt was alone with McNair in an isolated area of the prison, unable to call for backup on his radio, and did not know whether other officers were on their way to assist him. Appellant's Br. at 12. This is another crucial distinction between the facts of McNair's case and the clear Eighth Amendment violation in *Cordell*, where the defendant officer was part of a "procession" of multiple officials supervising the plaintiff prisoner. 759 F.3d at 577. As *Burnett* noted, *Cordell* clearly established an Eighth Amendment right where a compliant prisoner is "in an area of the jail where only *other jail officials* are present." *Burnett*, 33 F.4th at 912 (emphasis added). However, *Cordell* did not offer guidance

15

to officers in Pratt's position on wrestling with a noncompliant handcuffed prisoner in the absence of other jail officials while staying within the bounds of the Eighth Amendment. In other words, our caselaw has not yet explained the extent to which an officer throwing a noncompliant prisoner to the ground would violate the Eighth Amendment if that officer is in a situation where he cannot rely on his coworkers for backup. *Cf. Cordell*, 759 F.3d at 583 (discussing how the presence of other officials was a factor that rendered the defendant officer's use of force unjustifiable).

We therefore conclude that the district court erred by denying Pratt's motion for summary judgment, because Pratt's conduct did not violate clearly established law. We emphasize that our holding does not determine that Pratt's conduct was in full compliance with the Eighth Amendment's prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII. Rather, we only determine that where an isolated prison officer struggles to regain control over a noncompliant inmate, and throws that inmate to the ground in the process, our caselaw had not clearly established such conduct to be unconstitutional before June 11, 2019. Accordingly, even if Pratt's conduct was unconstitutional, he was not on notice of that fact on the date of his altercation with McNair, and is entitled to qualified immunity as a matter of law. *See* FED. R. CIV. P. 56(a); *Reich v. City of Elizabethtown*, 945 F.3d 968, 981 (6th Cir. 2019).

## IV.    Conclusion

Because McNair has failed to overcome Pratt's qualified-immunity defense, we REVERSE the district court's denial of Pratt's motion for summary judgment, and grant summary judgment for Pratt on grounds of qualified immunity.

**JULIA SMITH GIBBONS, Circuit Judge, dissenting.** Before us at the summary judgment stage of proceedings is evidence sufficient for a reasonable jury to find that corrections officer, Collin Pratt, slammed prisoner, David McNair, face first into a concrete floor for no reason other than because, after Pratt had threatened to make him "kiss concrete," McNair said "fuck you." DE 47-1, McNair Dep., Page ID 279. This series of events would be a clearly established violation of the Eighth Amendment to the United States Constitution, which prohibits violent assault on prisoners without a valid penological purpose. The majority today disregards this evidence and reverses the denial of summary judgment against the corrections officer. Because at this stage we are required to credit this evidence, and because such a needless infliction of violence contravenes the clearly established protections of the Eighth Amendment, I must respectfully dissent.

I.

The decision of a prison guard to use force against a prisoner can violate the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To show a violation of the Eighth Amendment, McNair must satisfy a two-prong test that entails both a "subjective" component and an "objective" component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The subjective component concerns Pratt's state of mind to see whether he used force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Second, the "objective" component requires that McNair's pain received from the force inflicted be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Cordell*, 759 F.3d at 580. And with respect to this serious pain, the Supreme Court has noted that "[i]njury and force [] are only imperfectly correlated, and it is the latter that ultimately

17

counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Thus, an inmate like McNair, who is subjected to needless and malicious violence, need not prove that the actual injury he received was sufficiently "serious."

A.

I begin with the subjective component. Simply put, our prison system does not allow pain without any penological purpose, and we do not condone violence against prisoners for violence's sake. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). It is true that some physical contact in the prison system is to be expected. *See Combs v. Wilkinson*, 315 F.3d 548, 556–57 (6th Cir. 2002). For instance, correctional officers can use force to maintain discipline in the context of a "prison disturbance" when an inmate is out of control and poses a threat. *Id.* at 557. But the use of force cannot be sadistic. It violates the Eight Amendment to inflict force on a prisoner when that force is not necessary to restore order. *See Roberson v. Torres*, 770 F.3d 398, 406–07 (6th Cir. 2014) (finding a clearly established violation of the Eighth Amendment when a prison guard used mace against a prisoner who appeared to be asleep when it was not necessary to restore order and less intrusive means to wake him were available). This is a well-trodden theme in our Eighth Amendment jurisprudence. For instance, in *Cordell v. McKinney*,[1] a prisoner verbally taunted a

---

[1] Counsel for McNair failed to bring *Cordell* to our attention in his briefs. However, we have an independent duty to determine if the right in question is clearly established, with "full knowledge" of our precedents. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994) (citing *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984)). Moreover, McNair did cite *Whitley v. Albers* in his briefs, which stands for the proposition that "unnecessary and wanton infliction of pain" is "cruel and unusual punishment forbidden by the Eighth Amendment." 475 U.S. at 319 (internal citation omitted). *Whitley*'s conclusion is the basis for my belief that—accepting McNair's deposition as true and

18

correction officer. *See* 759 F.3d at 577. In response, the officer rammed the prisoner's head against a wall. *Id.* at 577–78. We found that the officer's use of force in *Cordell* satisfied the subjective component of the Eighth Amendment inquiry because a jury could find that the officer had acted with the "malicious and sadistic intent to cause harm." *Id.* at 581. Such actions by prison officers based on "retribution and deterrence are not legitimate nonpunitive purposes." *United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007).

This brings us to the facts before us and whether Pratt's actions violated McNair's clearly established Eight Amendment rights. In so doing, we must remember that we are reviewing a decision at the district court rendered at the summary judgment stage. Here, there are two different versions of events brought out by two dueling depositions: Pratt's and McNair's. But McNair is the one defending against the motion of summary judgment and we view all evidence—including his story of events—in the light most favorable to McNair. *See Domingo v. Kowalski*, 810 F.3d 403, 413 n.5 (6th Cir. 2016); *see also Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (noting that the court should not weigh summary judgment evidence in favor of one party and that "[o]ur qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant").

According to McNair's sworn testimony, the following constituted the version of events that led to his injury. McNair was outside his cell on his way to attend prison schooling when Pratt accused McNair of referring to him using the N word and told McNair to go back to his cell. McNair told Pratt he would go back, but he wanted Pratt to tell the officials in charge of McNair's schooling that he was being forced to go back to his cell for fear of being disciplined for missing

---

making inferences in his favor—Pratt's decision to use force merely to inflict pain upon Pratt would be a clearly established violation of the Eighth Amendment.

his required school hours. McNair then willingly consented to be cuffed, and Pratt walked him toward the segregation cell. Once they got to the segregation cell, Pratt shoved McNair against the cell bars and dared McNair to say anything to him and that if he did, he was going "to make [McNair] kiss concrete." DE 47-1, McNair Dep., Page ID 279. In response, McNair said "fuck you," and Pratt slammed McNair's face into the concrete floor. *Id.* Throughout the interaction, McNair stated that he never resisted. This sworn testimony provides a reasonable jury with sufficient evidence to conclude that McNair's violence was sadistic, malicious, planned, and retributive. In other words, "unnecessary and wanton infliction of pain"—a clearly established violation of the subjective component of the Eighth Amendment. *Cordell*, 759 F.3d at 580.

This testimony by itself would be enough to create a fact issue at summary judgment; but it does not stand alone. After the incident, an internal investigation found sufficient evidence for five findings that Pratt violated the Michigan Department of Corrections ("MDOC") "use of force" policy when he slammed McNair to the ground. After finding Pratt guilty of those violations, MDOC terminated Pratt from his job. While violating the prison's use of force policy does not by itself create an Eighth Amendment violation, it certainly lends credence and support to McNair's testimony that the violence he suffered was cruel and unnecessary or, at the very least, far from standard practice.

Therefore, the subjective component of McNair's Eighth Amendment claims turns on a jury's consideration of the evidence and of whose story—Pratt's or McNair's—do they believe. *See Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988) ("[S]ummary judgment would not be appropriate if there is a factual dispute (*i.e.*, a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the

20

defendant did acts that violate clearly established rights."). If the jury credits McNair's testimony, then Pratt subjected McNair to unnecessary pain, which is a clearly established violation of the Eighth Amendment. *See Whitley*, 475 U.S. at 319. The majority claims this conception of an Eighth Amendment violation is stated at too high a level of generality because there is not a case that is enough on point to the "particularized contours" of McNair's testimony. In so doing, the majority disregards the law because "a plaintiff need not identify a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts. Rather the 'salient question is . . . whether the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [a plaintiff] was unconstitutional.'" *Ruemenapp v. Oscoda Twp. Mich.*, 739 F. App'x 804, 813 (6th Cir. 2018) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (alterations in original)). It is clearly established that a prison guard cannot cruelly and unnecessarily inflict pain without penological justification. Contrary to the majority's position, the law does not require plaintiff to have access to a case that shows a specific *exact* infliction of a certain type of pain being held unconstitutional to overcome qualified immunity. *See Hope*, 536 U.S. at 741 ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

B.

Next, we turn to the objective component of McNair's Eighth Amendment right. As noted, to survive summary judgment there must be evidence in the record to show that McNair suffered objective injury or pain. *Cordell*, 759 F.3d at 580. Here, McNair stated under oath that his head was "split open." DE 47-1, McNair Dep., Page ID 277. Supporting this testimony is a "critical incident report" from the Michigan Department of Corrections which indicates that McNair suffered abrasions to his face and a lump on his forehead. Combined with the evidence that Pratt

slammed McNair to the ground, a reasonable jury could find that Pratt violated McNair's objective Eighth Amendment rights. In any event, McNair did not need to show that he suffered that "serious" injury given the "excessive force context" of his claims. *Hudson*, 503 U.S. at 7, 9. This is because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true *whether or not* significant injury is evident." *Id.* (emphasis added) (internal citation omitted).

## II.

There are two stories about what took place during this incident. According to Pratt, McNair was uncooperative and resisting, and he may have even tried to spit on Pratt. According to McNair Pratt slammed his face onto the floor because he was being disrespectful. A reasonable factfinder could credit McNair's version of events, so this case should go to trial. *See Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 685 (6th Cir. 2013). Because the majority holds otherwise, I respectfully dissent.